In the **ESTATE OF Dollie Marie HERBERT, Deceased Crystal Denise Herbert and Lacey Diann Mayer, Appellants,**

v.

**Estel Don HERBERT, Respondent.**

No. WD 63031.

Missouri Court of Appeals,
Western District.

Oct. 12, 2004.

Motion for Transfer to Supreme Court
Denied Nov. 23, 2004.

Application for Transfer Denied
Jan. 25, 2005.

342

Creath S. Thorne, St. Joseph, MO, for appellant.

Lee C. Tieman, St. Joseph, MO, for respondent.

Before LOWENSTEIN, P.J., and EDWIN H. SMITH and HOWARD, JJ.

EDWIN H. SMITH, Chief Judge.

Sisters Crystal Denise Herbert and Lacey Diann Mayer appeal from a judgment of the Probate Division of the Circuit Court of Buchanan County denying their petition for the discovery of assets, filed pursuant to § 473.340,[1] in the decedent's estate (the estate) of their grandmother, Dollie Marie Herbert (the decedent). In their petition, they alleged that the respondent, their uncle, Estel Don Herbert, was wrongfully withholding from the estate of the decedent, his mother, approximately $135,110.02 in proceeds from the sale of her farm and certain personalty (sale pro-

ceeds). In that regard, they claimed in their petition that the respondent, acting under a durable power of attorney executed by the decedent (the POA), in violation of the Durable Power of Attorney Act (POA Act), §§ 404.700–.735, made a gift to himself of the sale proceeds by depositing them in a joint account he owned with the decedent (the joint account), which, pursuant to the right of survivorship provision of the account, became his sole property upon the decedent's death.

In their sole point on appeal, the appellants claim that the probate court erred in denying their petition for discovery of assets as to the sale proceeds deposited by the respondent in the joint account, because in doing so, the court misapplied §§ 404.712 and 404.714 of the POA Act and the provisions of the POA, which prohibited the respondent from commingling the decedent's accounts with his and making gifts of her assets to himself.

We reverse and remand.

## Facts

The decedent had two children, the respondent and the appellants' father, Gerald Dwayne Herbert, who died on April 9, 1998. On July 13, 1998, the decedent executed a "General Power of Attorney," designating the respondent as her attorney-in-fact. The POA included a provision, which authorized, *inter alia,* the respondent:

> To make gifts of any of my property or assets to members of my family; and to make gifts to such other persons or religious, educational, scientific, charitable or other nonprofit organizations to whom or to which I have an established pattern of giving; provided, however, that my Attorney-in-Fact may not make gifts of my property to himself.

1. All statutory references are to RSMo 2000, unless otherwise indicated.

On August 14, 1998, the decedent executed a second codicil to her will, which she executed on September 4, 1981. That codicil provided, in pertinent part:

I do further state that it is my intention to reinstate the provisions of my Last Will and Testament of September 4, 1981 which provides that upon my death, all of my property shall be divided equally between my son, Estel Don Herbert, or to his lawful heirs should he predecease me, and my two beloved granddaughters, Crystal Denise Herbert and Lacey Diann Herbert, or to their lawful heirs should they predecease me; meaning that one-half of my said estate is bequeathed to my son, Estel Don Herbert, or to his lawful heirs, and the other half of my estate is bequeathed to my granddaughters, Crystal Denise Herbert and Lacey Diann Herbert.

During the week of Thanksgiving 1998, the decedent suffered a stroke while she was visiting the respondent and his family in St. Joseph, Missouri. At the time, she was residing by herself in Bloomfield, Iowa, on the farm that she had owned with her deceased husband. She was hospitalized after the stroke and then moved to a nursing home in St. Joseph, Missouri.

On November 9, 1999, the joint bank account, with right of survivorship, was opened at the Mercantile Bank in St. Joseph, Missouri, in the names of the decedent and the respondent. The decedent died on September 26, 2001.

Sometime in late 1999 or early 2000, the decedent made the decision to sell the farm. Accordingly, a farm auction was conducted on September 9, 2000, at which the household goods, equipment, tools, etc. were sold. On September 12, 2000, a check in the amount of $16,265.88, representing the sale proceeds from the farm auction, was deposited in the account. The check, dated September 11, 2000, was made out to "Dollie Herbert," and the endorsement on the back read "Estel D. Herbert POA." On October 12, 2000, a check, in the amount of $118,844.14, representing the proceeds from the sale of the decedent's farm was deposited in the joint account. The check, dated October 9, 2000, was made out to "Dollie Herbert, Estel Herbert, POA," and the endorsements on the back read "Dollie Herbert" and "Estel Herbert POA."

On November 16, 2001, the decedent's last will and testament and an application for probate were filed in the Probate Division of the Circuit Court of Buchanan County. On May 23, 2002, the appellants filed a petition for discovery of assets, alleging that the respondent had improperly deposited the sale proceeds in the joint account. The probate court appointed Steve Tyrell as the personal representative *ad litem* of the decedent's estate to represent its interests in the proceeding. In that capacity, Tyrell conducted an investigation of the assets of the estate and prepared a written inventory of those assets.

The case was tried to the court on May 9, 2003. The respondent testified at trial that, in late 1999 or early 2000, the decedent decided to sell her farm and all that went with it, so she could use the proceeds to pay the continuing costs of residing in the nursing home. The respondent testified that pursuant to the decedent's request, he auctioned off the property as directed. As to what was to be done with the $16,265.88 in proceeds from the sale of the farm personal property, he was asked at trial by his trial counsel: "Was there any discussion about where the sale of that proceeds check should go?" He answered, "Yeah. She told me to put it in the joint account. 'Our account' is what she told me." The respondent was also asked whether he and the decedent discussed what to do with the $118,844.14 in pro-

ceeds from the sale of the farm, and the following exchange occurred:

Q. Did you have a discussion about what should be done with the land sale check?

A. I asked her, I said, Mom, where do you want it?

Q. And what did she tell you?

A. She said, put it in our account.

Q. Did you ever have any discussions, either before the joint account was opened or afterwards, about what would happen if one of you died?

A. Yeah.

Q. What was that—what was the substance of that conversation?

A. Well, she said that we were the only two left of the immediate family. And she wasn't going to be around forever. And she wanted me to have it.

The respondent further testified that he withdrew funds from the joint account to pay the decedent's nursing home and medical expenses, but he never withdrew any funds for his personal use.

The personal representative *ad litem* testified at the trial that he had conducted an investigation of the assets of the estate. A written inventory of those assets, prepared by him, was admitted into evidence. He also testified that "all of the money that was spent out of the joint account was used for [the decedent's] use and benefit." The written inventory, which was dated April 28, 2003, stated that, as of April 25, 2003, a balance of $122,238.41 remained in the account.

On May 30, 2003, the probate court entered a judgment finding that only $2,199.45 had been improperly withheld by the respondent from the decedent's estate, an amount which apparently represented some utilities stock that the decedent had owned and was not mentioned in the appellants' discovery of assets petition. The judgment assessed the costs of the action, including Tyrell's personal representative fees of $6,862.28, against the appellants. On June 25, 2003, the court's judgment was amended to assess $1,502.50 in attorney's fees incurred by Tyrell against the appellants. In addition, the amended judgment ordered that "[a]ll other claims of [the appellants] are denied."

This appeal followed.

## Standard of Review

■ The standard of review in a discovery of assets proceeding is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *In re Estate of Boatright*, 88 S.W.3d 500, 504 (Mo.App.2002). Consequently, the decree or judgment of the probate court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Id.* In this case, there was no request for findings of fact and conclusions of law, and so the probate court is presumed to have made its findings in accordance with the decree entered and its judgment will be affirmed under any reasonable theory supported by the evidence. Rule 73.01(c); *In re Estate of Newman*, 58 S.W.3d 640, 645 (Mo.App. 2001).

## I.

In their sole point on appeal, the appellants claim that the probate court erred in denying their petition for discovery of assets as to the sale proceeds deposited by the respondent in the joint account because in doing so, the court misapplied §§ 404.712 and 404.714 of the POA Act and the provisions of the POA, which prohibited the respondent from commingling the decedent's accounts with his and making gifts of her assets to himself. Specifi-

cally, they claim that the sale proceeds belonged solely to the decedent at the time of her death in that their deposit in the joint account by the respondent, acting as the decedent's attorney-in-fact, constituted an unauthorized gift to himself of the decedent's assets, voiding the deposit, such that title of the sale proceeds never passed from the decedent to the joint account in the first instance.

■ A discovery of assets proceeding is authorized by § 473.340, which provides, in pertinent part:

Any personal representative, administrator, creditor, beneficiary or other person who claims an interest in property which is claimed to be an asset of an estate or which is claimed should be an asset of an estate may file a verified petition in the probate division of the circuit court in which said estate is pending seeking determination of the title, or right of possession thereto, or both.

§ 473.340.1. As the name implies, a discovery of assets action is a search for assets belonging to the decedent at his death. *Boatright,* 88 S.W.3d at 509. The court's role in a discovery of assets action "is to determine whether specific property has been adversely withheld [from the estate] or claimed." *Id.* at 505. Upon the trial of the discovery of assets action, the "court shall determine the persons who have an interest in said property together with the nature and extent of any such interest." § 473.340.3. If the probate court determines that the property belongs to the estate, it shall order the transfer of the title or possession, or both, to the estate. *Id.* And, if the property in question has been disposed of, the court shall render a "money judgment for the value thereof with interest thereon from the date the property, or any interest therein, was adversely withheld." *Id.*

■ Inasmuch as the purpose of a discovery of assets proceeding is to determine whether the assets in question were owned by the decedent at the time of his death and are being wrongfully withheld from his estate, traditionally, the ultimate issue in such a proceeding is "whether title to the assets in question had passed from the decedent to another person prior to the former's death." *Boatright,* 88 S.W.3d at 509. Here, the respondent contends that the sale proceeds did not belong to the decedent at the time of her death in that, pursuant to § 362.470.1, governing "joint deposits" in banks, title to the proceeds passed to the joint account at the time of their deposit, then passed to him as the sole surviving party to the account.

■ Where, as here, a party, in defense of a discovery of assets action, claims a transfer of title to the property sought to be discovered prior to the decedent's death such that the property did not belong to the decedent's estate at the time of death, implicit in the action is a claim that the transfer was ineffective. *Boatright,* 88 S.W.3d at 509. Here, the appellants claim that the attempted transfer of title of the sale proceeds from the decedent to the joint account was ineffective. In that regard, they contend that there was never a transfer of title because the deposit of the sale proceeds by the respondent in the joint account, acting as the decedent's attorney-in-fact, violated §§ 404.712 and § 404.714 of the POA Act, and the provisions of the POA, prohibiting him from commingling the decedent's accounts with his and making gifts from decedent to himself. In other words, they are contending that the deposit was an unauthorized conversion of the decedent's property and was, thus, void *ab initio* such that the title to the proceeds never passed to the joint account so as to subject them to the presumption of joint tenancy with a right

of survivorship of § 362.470.1. Essentially, what the appellants are contending is that the respondent wrongfully converted the decedent's property from her sole property to a joint tenancy with the respondent. "A proceeding under section 473.340 is similar to common law actions of trover or conversion." *Boatright*, 88 S.W.3d at 506 (citations omitted).

In claiming that the deposit of the sale proceeds in the joint account by the respondent was unauthorized and ineffective in transferring title to the joint account so as to invoke the presumption of § 362.470.1, the appellants contend that it violated § 404.712.1 as to keeping the principal's property and accounts separate from other property and accounts, requiring that:

> [a]n attorney in fact acting for the principal under a power of attorney shall clearly indicate his capacity and shall keep the principal's property and accounts separate and distinct from all other property and accounts in a manner to identify the property and accounts clearly as belonging to the principal.

As to § 404.714, they contend that the deposit of the sale proceeds violated three provisions thereof, which violations they denominate in their brief as: (1) "Conflicts of interest must be avoided;" (2) "An attorney-in-fact has a fiduciary obligation;" and (3) "An attorney-in-fact must respect the principal's estate plan." As to (1), they cite the requirement of § 404.714.1, that:

> [a]n attorney in fact who elects to act under a power of attorney is under a duty to act in the interest of the principal and to avoid conflicts of interest that impair the ability of the attorney in fact so to act. A person who is appointed an attorney in fact under a power of attorney ... has a fiduciary obligation ... to avoid self dealing and conflicts of interest.

As to (2), they cite the provision of § 404.714.1 requiring that: "[a] person who is appointed an attorney in fact under a power of attorney, either durable or not durable, who undertakes to exercise the authority conferred in the power of attorney, has a fiduciary obligation to exercise the powers conferred in the best interests of the principal." And, as to (3), they cite the requirement of § 404.714.1 that: "in the absence of explicit authorization, the attorney in fact shall exercise a high degree of care in maintaining, without modification, any estate plan which the principal may have in place."

As to the appellants' claim that the deposit of the sale proceeds in the joint account violated the POA, they cite to the provision that authorized the respondent:

> [t]o make gifts of any of my property or assets to members of my family; and to make gifts to such other persons or religious, educational, scientific, charitable or other nonprofit organizations to whom or to which I have an established pattern of giving; *provided, however, that my Attorney–in–Fact may not make gifts of my property to himself or herself.*

(Emphasis added.) In that regard, § 404.710.6(3) provides, in pertinent part:

> Any power of attorney may grant power of authority to an attorney in fact to carry out any of the following actions *if the actions are expressly authorized in the power of attorney:*
>
> . . .
>
> (3) To make or revoke a gift of the principal's property in trust or otherwise.

(Emphasis added). Thus, although a principal may authorize the attorney in fact to make a gift of the principal's property, here, the decedent not only did not authorize such gifts, but expressly provided in

the POA that the respondent could not make such a gift to himself.

■ In claiming as they do in this appeal, it is important to note that the appellants are not challenging the creation of the joint account nor are they making any argument with respect to the rebuttal of the presumption of joint tenancy with a right of survivorship of § 362.470.1, as applied to any deposits that were lawfully made to the account. Rather, they are claiming that the respondent had no legal authority to transfer the decedent's assets, the sale proceeds, to the joint account of which he was an owner, having been expressly prohibited from doing so, such that the presumption of § 362.470.1 never attached. It is also important to note that in opposing the appellants' claim, the respondent does not quibble with the appellants' assertions as to what was required of him under the POA Act and the POA concerning his duties and obligations, and the limitations of his powers, as the decedent's attorney in fact, with respect to the commingling of the decedent's accounts with his and making gifts to himself. Rather, he first argues that once the sale proceeds were deposited by him in the joint account, regardless of whether he had authority under the POA to make that deposit, that the provisions of § 362.470.1, governing joint bank accounts, operated to presumptively demonstrate that the sale proceeds, at the time of the decedent's death, became his sole property as the surviving party to the account and that the only way the appellants could defeat the presumption was to show fraud, undue influence, mental incapacity or mistake, with respect to the creation of the joint account or the making of the deposits, which they did not do. *See Braden v. von Stuck,* 950 S.W.2d 489, 492–93 (Mo.App.1997) (holding that if § 362.470.1 applies, then the presumption of joint tenancy with right of survivorship is conclusive, and can only be defeated by

establishing fraud, undue influence, mental incapacity or mistake). If he is correct in this argument, such that the presumption of joint ownership with a right of survivorship of § 362.470.1 would apply, then the appellants must lose on this point in that they do not make any argument with respect to their having rebutting that presumption. Hence, in determining this point, we must first determine the applicability of the presumption of § 362.470.1 with respect to the deposit of the sale proceeds in the joint account.

■ In interpreting statutes, we are to ascertain the intent of the legislature. *Pavlica v. Dir. of Revenue,* 71 S.W.3d 186, 189 (Mo.App.2002). In ascertaining the legislative intent, we are to give the language used its plain and ordinary meaning. *Id.* Where the legislative intent is made evident by giving the language employed in the statute its plain and ordinary meaning, we are without authority to read into the statute an intent, which is contrary thereto. *Id.* If the legislative intent cannot be ascertained from the language of the statute, by giving it its plain and ordinary meaning, the statute is considered ambiguous and only then can the rules of statutory construction be applied. *Id.*

Section 362.470.1 provides, in pertinent part:

> When a deposit is made by any person in the name of the depositor and any one or more other persons, whether minor or adult, as joint tenants or in form to be paid to any one or more of them, or the survivor or survivors of them and whether or not the names are stated in the conjunctive or the disjunctive or otherwise, the deposit thereupon and any additions thereto made by any of these persons, upon the making thereof, shall become the property of these persons as joint tenants, and the same, together

with all interest thereon, shall be held for the exclusive use of the persons so named, and may be paid to any one of such persons during his lifetime, or to any one of the survivors of them after the death of any one or more of them. The making of a deposit in such form, and the making of additions thereto, in the absence of fraud or undue influence, shall be conclusive evidence in any action or proceeding to which either the bank or trust company or any survivor is a party of the intention of all the parties to the account to vest title to the account and the additions thereto and all interest thereon in the survivor.

This section has been interpreted to mean that, if the language of the account documents complies with § 362.470.1 through one of the methods outlined, the presumption of joint tenancy with right of survivorship is conclusive. *Braden*, 950 S.W.2d at 492. However, we find no cases that would interpret it as argued for by the respondent—that any deposit, even an unauthorized deposit by an agent of a principal's property. Moreover, giving the language used its plain and ordinary meaning, we are not led to such an interpretation.

■■■■ Section 362.470.1 provides the means by which a joint tenancy, with right of survivorship, can be created with respect to a deposit in a bank account. *Maudlin v. Lang*, 867 S.W.2d 514, 516 (Mo. banc 1993). However, implicit in this statute is the fact that it has no application unless the depositor has the authority, in the first instance, to change the manner in which the funds are titled prior to deposit. This is so in that as a matter of general property law, one who does not hold title to property or is not acting within his scope as an agent for the owner, cannot pass or transfer title to that property. *City of St. Louis v. Hill*, 116 Mo. 527, 22 S.W. 861, 862 (1893); *Mullin v. Trolinger*, 237 Mo.App. 939, 179 S.W.2d 484, 490 (Mo. App.1944) (holding that the right to dispose of property is exclusive to ownership). Hence, without the implied requirement that the depositor have the authority to pass title to the funds constituting the deposit, § 362.470.1 could be read such that a deposit in a joint account of stolen money, in the form statutorily provided, would presumptively belong to the survivor of the account, unless fraud or undue influence was shown in the making of the deposit. That, obviously, was not the intent of the legislature.

The respondent cites three cases, which he contends support his interpretation of § 362.470.1, that the deposit to a joint bank account, whether it is authorized or not, transfers title of the deposit to the joint account making it subject to the presumption of joint tenancy with a right of survivorship: *Dickinson v. Dickinson*, 87 S.W.3d 438 (Mo.App.2002); *Braden*, 950 S.W.2d 489; and *Estate of Evelyn S. Linck, Deceased*, 645 S.W.2d 70 (Mo.App. 1982). In making this argument and relying on the cases cited, the respondent fails to distinguish between two distinct fact situations: (1) the *owner* of the funds, the principal, deposits them in a joint account belonging to the owner/principal and the attorney-in-fact; and (2) the *attorney in fact*, acting in that capacity, deposits the principal's funds in a joint bank account belonging to the attorney in fact and the principal. In the first fact situation, assuming that the principal is competent, there is no question as to his or her authority to pass title of his or her own funds to the joint account, thereby subjecting them to the provisions of § 362.470.1. However, in the second fact situation, the one presented in our case, the question logically arises initially as to the authority of the attorney in fact to transfer the principal's assets into the joint account so as to subject them to the provisions of

§ 362.470.1. Inasmuch as neither *Braden* nor *Dickinson* deal with the second fact situation, neither are persuasive on the issue of whether an unauthorized deposit in a joint account of a principal's assets by an attorney in fact is subject to the presumption of joint tenancy with a right of survivorship of § 362.470.1.

In *Braden,* the issue was whether the decedent had converted *her* sole checking account into a joint account with her son, with right of survivorship, by signing a replacement signature card some ten years after the creation of the account, such that it was subject to the presumption of § 362.470.1. *Braden,* 950 S.W.2d at 492. That issue, in turn, turned on whether the replacement signature card sufficiently complied with one of the three routes identified by the Missouri Supreme Court in *Maudlin,* 867 S.W.2d at 516, for creating a joint account with right of survivorship, in accordance with § 362.470.1. *Braden,* 950 S.W.2d at 492. Ultimately, the court concluded that the signature card, signed by the decedent, complied with route two of § 362.470.1 for creating a joint account such that the presumption of joint ownership with a right of survivorship of that section was invoked. There is nothing in *Braden* that can be cited for the proposition that the presumption of § 362.470.1 applies to a deposit to an existing joint account where the deposit or transfer of the owner's funds to the account was not authorized by the owner in the first instance.

In *Dickinson,* the same day as she executed a durable POA in favor of her nephew, the principal/aunt placed the nephew's name on her checking account and six certificates of deposit as a joint tenant with a right of survivorship. 87 S.W.3d at 441. After the aunt and nephew had both died, the nephew's brother brought suit to establish a constructive trust with respect to the checking account and certificates of deposit, claiming that his brother had used undue influence in inducing his aunt to add his brother's name as a joint tenant on her checking account and certificates of deposit. *Id.* Finding no undue influence, the court held that the presumption of joint ownership with right of survivorship had not been rebutted, such that evidence of a testamentary intent of the aunt to the contrary was irrelevant. *Id.* at 444.

In *Dickinson,* as in *Braden,* the lynchpin issue was whether the owner of the accounts had been unduly influenced in converting her *own* assets to a joint tenancy, which is not our case. As noted, *supra,* our case involves the attorney in fact converting the principal's assets to a joint tenancy, pursuant to a POA, raising the initial and added question of whether the conversion was authorized by the principal, the owner of the assets. There is nothing in *Dickinson* or *Braden* that supports the proposition that the presumption of § 362.470.1 applies to any deposit to an existing joint account, whether or not the deposit or transfer of the owner's funds by a third party to the joint account was authorized by the owner in the first instance.

In *Linck,* the third case relied upon by the respondent, the administrator of the decedent's estate filed a petition against the decedent's niece and the niece's husband to determine the title to and right of possession of certain certificates of deposit, bank accounts and checking accounts claimed by the niece and her husband as survivors of the various accounts, which they claim were jointly held with the deceased at her death. 645 S.W.2d at 73. Unlike the situation in *Braden* and *Dickinson,* most of the joint accounts in question were, in fact, created by the niece, acting as the decedent's attorney in fact. The administrator alleged in support of his pe-

tition, generally, that the joint accounts had not been created in accordance with § 362.470.1, governing joint deposits in banks and trust companies, and § 369.150, governing joint tenants' accounts in savings and loan associations, and that even if the accounts had been established in accordance with the applicable statutes, they were created through fraud and undue influence. *Id.* at 74–75. The administrator further alleged that the accounts in question were not jointly held because they were created by the niece pursuant to the POA, which was obtained by undue influence and fraud. *Id.* The court, in holding that the various accounts were jointly held by the niece and her husband, found that the POA was not obtained by fraud or undue influence and that the accounts had been validly created, such that the presumption of § 362.470.1 and the identical presumption of § 369.150 applied, and that they had not been rebutted, rendering evidence of a contrary testamentary intent of the decedent, as to the disposition of the accounts and certificates, irrelevant. *Id.* at 76.

In holding as it did, the *Linck* court observed that neither § 362.470.1 nor § 369.150 made any distinction between a joint account created by the principal himself or by the attorney in fact, which we discuss, *supra*, as being significant. With that in mind, the court seemed to suggest that regardless of who made the deposit of what funds, the presumption applied, relying on *In re Estate of LaGarce*, 487 S.W.2d 493 (Mo. banc 1972). However, *LaGarce*, unlike *Linck*, did not involve a deposit in a joint account by an attorney in fact. Rather, *LaGarce* involved the decedent's converting his sole accounts into a joint account with his friends. Thus, *LaGarce* does not support the proposition that the presumption of § 362.470.1 applies even if the deposit of funds to the joint account by the attorney in fact was not authorized in

the first instance. This same argument was made by the attorney in fact in *Boatright* and rejected. 88 S.W.3d at 508.

While reading only a portion of the opinion in *Linck*, one might conclude that the court was holding that the presumption of § 362.470.1 would apply regardless of whether the attorney in fact had the requisite authority to deposit the principal's funds in the joint account, a full reading demonstrates otherwise. In *Linck*, in addition to the other issues raised by the administrator on appeal, he also claimed that the attorney in fact, in transferring the principal's assets to the joint accounts, had violated his duty as an "agent" of the principal. 645 S.W.2d at 76. He claimed that the attorney in fact, in creating the joint accounts with the principal's assets, was not authorized to do so such that title to the assets never passed to the joint account so as to make them subject to the presumption of § 362.470.1. The *Linck* court rejected this argument, *not* on the basis that the presumption of § 362.470.1 applied regardless of whether the attorney in fact had the authority to create the joint tenancies, but on the basis that there was evidence that the principal had expressly directed the attorney in fact to make the deposits. *Id.* From this analysis, it would appear that the *Linck* court was recognizing that before a deposit is subject to the presumption of § 362.470.1, there must be a showing that the depositor had the requisite legal authority to convert the principal's funds into a joint tenancy. Thus, despite some confusion in the opinion as to the reach of the presumption of § 362.470.1, as interpreted in *LaGarce*, the *Linck* court, without articulating the issue presented in this case, ultimately recognized that the presumption does not control with respect to the issue of whether the attorney in fact was authorized to con-

vert the principal's property into a joint tenancy.

Having rejected the respondent's initial argument that the mere act of depositing the sale proceeds in the joint account was sufficient to invoke the presumption of joint tenancy with right of survivorship of § 362.470.1, we now turn to the issue of whether, in fact, he was authorized to deposit the sale proceeds in the joint account so as to invoke § 362.470.1. In that regard, there is no dispute that on November 9, 1999, the joint account in question was opened at the Mercantile Bank in St. Joseph, Missouri. The "Consumer Signature Card" for the account, which was signed by the decedent and the respondent, indicated that the "ACCOUNT OWNERSHIP" was "Joint—With Survivorship and not as tenants in common." Thus, pursuant to § 362.470.1, governing "joint deposits" in a bank or trust company, the *account* became the property of the decedent and the respondent, as joint tenants. The appellants do not challenge the creation of this account.

There is also no dispute that on September 12, 2000, the respondent deposited in the joint account a check, dated September 11, 2000, made out to "Dollie Herbert," and endorsed by the respondent as "Estel Herbert POA," for $16,265.88, representing the sale proceeds from the auction of the decedent's personal farm property. Likewise, there is no dispute that the respondent deposited in the joint account a check, dated October 9, 2000, made out to "Dollie Herbert, Estel Herbert, POA," and endorsed by the respondent as "Dollie Herbert, Estel Herbert, POA," for $118,844.14, representing the sale proceeds of the decedent's farm. Hence, given the fact that there is no dispute that the respective sale proceeds, prior to deposit by the respondent, belonged to the decedent as her sole property, for the presumption of § 362.470.1 to apply, there would have to be a showing that the respondent was authorized by the decedent to make the deposits of the sale proceeds to the joint account, so as to pass title of the proceeds to the account, invoking the presumption of § 362.470.1.

With respect to the respondent's authority to convert the decedent's sole property, the sale proceeds, to a joint tenancy, by depositing them in the joint account, the appellants pointed out to the trial court below that not only does the POA lack a provision authorizing the respondent to make gifts to himself from the principal's assets, but that it expressly prohibits him from making such gifts. Thus, the appellants made a *prima facie* case of conversion against the respondent as to the sale proceeds, shifting the burden to him "to refute the proposition that the funds belonged to [the decedent] at the time of [her] death," *Boatright,* 88 S.W.3d at 509, by operation of the right of survivorship provision of § 362.470.1. The respondent does not dispute the prohibition in the POA, prohibiting him from making gifts of the decedent's property to himself. However, he contends that this express prohibition of the POA was countermanded by the decedent's oral direction to him to make the deposit of the sale proceeds in the joint account. The appellants contend, however, that this oral authorization, as a matter of law, was not sufficient to defeat the express written prohibition in the POA, prohibiting the respondent from making a gift of the sale proceeds to himself, citing *Boatright,* 88 S.W.3d at 509; *Williams v. Walls,* 964 S.W.2d 839, 847–48 (Mo.App.1998); *Arambula v. Atwell,* 948 S.W.2d 173, 177 (Mo.App.1997).

In *Arambula,* the trial court ordered that a deed, executed by the attorney in fact under a POA, conveying real property of the principal (the attorney in fact's fa-

ther) to the attorney in fact and his sisters, be set aside. 948 S.W.2d at 176. The attorney in fact appealed to the Southern District of this court. The Southern District upheld the judgment of the trial court, finding that the conveyance by the attorney in fact constituted a gift to himself, which was not authorized by the POA, as required by § 404.710.6(3), such that the attorney in fact had breached his fiduciary relationship with the principal as his agent under the POA. *Id.* at 177–78. The attorney in fact argued that despite there not being an express written authorization of the gift in the POA, as envisioned by § 404.710.6(3), he had been orally authorized to make the conveyance such that there was no breach. *Id.* at 176. The court rejected this argument as being contrary to the requirement of § 404.710.6(3), that the authority of an attorney in fact to make gifts to himself has to be in writing. *Id.* at 177. In so holding, the court cited *Fender v. Fender*, 285 S.C. 260, 329 S.E.2d 430 (1985). *Id.* In *Fender*, the trial court ruled that the attorney in fact was without authority, under the POA, to make the transfer of real and personal property to himself. 329 S.E.2d at 431. The Supreme Court of South Carolina upheld the trial court and in the process rejected the attorney in fact's argument that an oral authorization of the principal to convey the property was sufficient to uphold the gift, stating:

> Notwithstanding such a claim we hold today that any purported oral authorization was ineffective. The power to make any gift must be expressly granted in the instrument itself.
>
> It is for the common security of mankind ... that gifts procured by agents ... from their principals, should be scrutinized with a close and vigilant suspicion.

*Id.* (Citations omitted.) Thus, we read *Arambula* as requiring, in accordance with § 404.710.6, written authorization from the principal in order for the attorney in fact to make a gift to himself of the principal's property.

Although in the context of a constructive trust action, rather than an action to set aside a deed as in *Arambula*, in *Williams*, the appellate court was faced with the same issue of whether the attorney in fact had violated her fiduciary obligations and duties to the principal, imposed by § 404.710.6, by making a gift of the principal's property to herself without written authorization. 964 S.W.2d at 848. In reversing the trial court's judgment, denying the personal representative's suit for the imposition of a constructive trust as to the gifted property, the appellate court found that the attorney in fact had violated the fiduciary obligations imposed on her by § 404.710.6 by making a gift to herself of the principal's property without being expressly authorized in the POA to do so. *Id.*

In *Boatright*, the attorney in fact, the principal's brother, deposited the proceeds, approximately $66,288.50, from the sale of the principal's interest in real estate he owned with his ex-wife, into a joint account owned by the principal and the attorney in fact. 88 S.W.3d at 503–04. Due to an ongoing illness of the principal, he and his new wife had executed a POA, authorizing the attorney in fact to " 'do all acts and things in connection with the acquisition, management, sale and/or encumbrance' of the real property in question." *Id.* at 503. Just prior to the principal's death, the attorney in fact, transferred $65,000 from the joint account to his sole account. *Id.* at 504. After the principal's death, his new wife, as personal representative of his estate, filed a discovery of assets action seeking to recover the sale proceeds from

the attorney in fact, claiming that he had wrongfully converted them to his own use. Although there was nothing in writing that would have authorized the attorney in fact to deposit the sale proceeds in his joint account, he testified that he had received oral authorization from the principal to do just that. The appellate court, in upholding the probate court's judgment for the personal representative, discussed the fact that the court was free to disbelieve the attorney in fact's testimony as to his being orally authorized to deposit the sale proceeds in the joint account. *Id.* at 510. However, the court made it clear, citing § 404.710.6(3) and *Arambula*, that without express written authority from the principal, the attorney in fact could not make a gift of the sale proceeds to himself by depositing them in the joint account. *Id.* at 509–10. Thus, according to the *Boatright* court, whether the attorney in fact had oral authorization from the principal to make the deposit of the sale proceeds was ultimately irrelevant.

In summary, we read all three cases cited by the appellants as standing for the proposition that, pursuant to § 404.710.6(3) of the POA Act, an attorney in fact is prohibited from making a gift of the principal's property to himself, unless he is expressly authorized to do so in the POA. The "if" in the second sentence of § 404.710.6, "Any power of attorney may grant power of authority to an attorney in fact to carry out any of the following actions [including authority to make or revoke a gift of the principal's property] *if* the actions are expressly authorized in the power of attorney," reflects an intent of the legislature to make the authority of the attorney in fact to gift to himself the principal's property conditional on there being express authority in the POA to do so. *See State v. Murphy*, 347 Mo. 484, 148 S.W.2d 527, 532 (Mo. *banc* 1941)(indicating that the term "if" introduces a condition).

Strong public policy exists for doing so. As the court said in *Fender*: "It is for the common security of mankind ... that gifts procured by agents ... from their principals, should be scrutinized with a close and vigilant suspicion." 329 S.E.2d at 431. Without a limitation on an attorney in fact's power to make gifts to himself of the principal's property, the potential for abuse would be great. Without the limitation of § 404.710.6(3), an attorney in fact, if so inclined, would be allowed to make an unauthorized gift, based upon claimed oral authorization of the principal, and the only person who could refute the claim would be dead. Rather than have each case, under such circumstances, come down simply to a credibility call with respect to the attorney in fact's representation as to his authority, the legislature in its wisdom has seen fit to include the requirement of § 404.710.6 to protect a class of people, the principals, who by the very circumstances that spawned the granting of the POAs, are least likely to be able to protect themselves from self dealing by unscrupulous fiduciaries.

In ruling as we do, that § 404.710.6(3) requires written authorization from the principal for the attorney in fact to make a gift to himself of the principal's property, we are mindful of this court's decision in *Linck*, which we discuss, *supra*. There, the court, *inter alia*, found that the attorney in fact had not acted outside her scope of authority as an attorney in fact, in creating the joint tenancies in question from the principal's property, in that there was evidence that she had been orally authorized by the principal to do so. *Linck*, 645 S.W.2d at 76. *Linck*, however, was decided in 1982, some seven years prior to the enactment of § 404.710.6. And, prior to its enactment, there was no comparable provision requiring written authorization from the princi-

pal to allow an attorney in fact to make gifts to himself from the principal's property. Thus, to the extent that *Linck* holds that an oral authorization from the principal is sufficient for an attorney in fact to make a gift of the principal's property to himself, it has, in effect, been overruled by the enactment of § 404.710.6 and the cases interpreting it.

Inasmuch as the claimed oral directive from the decedent to the respondent to deposit the sale proceeds in the joint account was ineffective, as a matter of law, the title of the sale proceeds never passed to the joint account so as to make them subject to the presumption of joint tenancy with a right of survivorship of § 362.470.1. Hence, the sale proceeds belonged to the decedent at the time of her death such that the probate court erred in entering judgment for the respondent on the appellants' petition for discovery of assets, requiring us to reverse and remand for the probate court to enter judgment for the appellants.

■■■ Section 473.340 provides, in pertinent part, that if the probate court determines that the property belongs to the estate, it shall order the transfer of the title or possession, or both, to the estate. Here, although there is no question that the entire amount of the sale proceeds was wrongfully converted by the respondent, the question arises as to whether the whole amount is transferable to the estate inasmuch as the respondent claimed at trial that a portion of the proceeds was spent on the decedent prior to her death. Inasmuch as § 473.340.1 expressly provides that the judgment should be for the value of the property that was being "adversely withheld" from the estate, the respondent could not be charged for the sale proceeds that were properly expended in accordance with the POA. *See Boatright,* 88 S.W.3d at 509 (giving credit to the attorney in fact for $10,000 he paid over to the surviving spouse of the principal to pay the principal's debts). Thus, because the record was not fully developed in that regard, on remand, the probate court will be required to conduct a further hearing to determine what credits, if any, to give the respondent for the sale proceeds expended on the decedent, in entering its judgment against him. And, if the amount found by the trial court as being wrongfully withheld from the estate by the respondent, after giving him credit, if any, for monies spent on the decedent, is less than the balance remaining in the joint account, the judgment will order the transfer of the funds equal to the amount found as being wrongfully withheld. On the other hand, if the amount found by the trial court to be due the estate is greater than the remaining balance in the joint account, the appellants would be entitled to a judgment requiring the remaining assets of the joint account be transferred to the estate and a money judgment for the deficiency, with interest from the date the sale proceeds were deemed to have been wrongfully withheld.

## Conclusion

The judgment of the Probate Division of the Circuit Court of Buchanan County for the respondent on the appellants' petition for discovery of assets is reversed and the case is remanded for further proceedings consistent with this opinion.

LOWENSTEIN, P.J., and HOWARD, J., concur.