

# In the Missouri Court of Appeals
### Western District

In the Estate of MARTHA LUTISHA )
QUALLS; )
DEBRA  M. KIRCHHOF, )
      Appellant, )  **WD76962**
v. )
            )   **FILED: July 29, 2014**
BONNIE WILLIAMS, )
      Respondent. )

## APPEAL FROM THE CIRCUIT COURT OF CALLAWAY COUNTY
### THE HONORABLE CAROL A. ENGLAND, JUDGE

### BEFORE DIVISION ONE: MARK D. PFEIFFER, PRESIDING JUDGE,
### LISA WHITE HARDWICK AND KAREN KING MITCHELL, JUDGES

Debra Kirchhof appeals from a probate order that reversed her deposit of funds, as attorney-in-fact for the decedent, into a bank account on which Kirchhof herself was listed as a pay-on-death beneficiary.  The circuit court found that Kirchhof exceeded her authority as attorney-in-fact by depositing the funds into the account.  For reasons explained herein, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

On December 6, 2006, Martha Lutisha Qualls (the "decedent") executed a Last Will and Testament, naming her son, John Qualls, her stepdaughter, Bonnie Williams, and her step-granddaughter, Debra Kirchhof, as the equal beneficiaries of: "[A]ll of my estate, whether real, personal or mixed, wheresoever situated which I may own at the

time of my death." Additionally, in the Will, the decedent named Qualls and Kirchhof as co-personal representatives of her estate.

On December 6, 2006, the decedent also executed a Durable Power of Attorney (POA), naming Kirchhof as her attorney-in-fact. The POA included a provision authorizing Kirchhof:

> [T]o make gifts or transfers in my name out of my property and assets to such recipients as her sole discretion may seem appropriate and proper . . . . Said attorney-in-fact, may herself be a recipient of such gifts. If I have a current Will, the terms thereof shall be respected as to gifts by my said attorney."

On March 24, 2007, at the instruction of decedent, Callaway Bank amended the signature card for a checking account that decedent opened in 1966 (the "Callaway Account"). The amended signature card named Kirchhof as an authorized signatory, and named Kirchhof and Qualls as pay-on-death beneficiaries, each to share fifty percent of the funds in the Callaway Account upon the death of the decedent.

On August 23, 2009, Kirchhof, acting as attorney-in-fact, sold the decedent's home, acreage, and household contents at auction. The net proceeds from the auction were $80,240.00 — $5,395.00 from the household contents and $74,845.00 from the home and acreage. Kirchhof deposited the $80,240.00 into the Callaway Account. Kirchhof testified that her deposit of the proceeds into the Callaway Account was not at the direction of the decedent. Some of the funds in the bank account were used for decedent's living expenses. However, there was no evidence that the sale of the decedent's property was necessary to cover those expenses.

The decedent died on February 23, 2010, at the age of 93. In accordance with the pay-on-death beneficiary designation for the Callaway Account, Callaway Bank paid

the balance of the account existing at the time of the decedent's death to Kirchhof and Qualls.

On April 27, 2010, in the Circuit Court of Callaway County, Kirchhof filed a Small-Estate Affidavit,[1] asserting that the value of the decedent's estate did not exceed $40,000 and seeking to establish title in the estate without the granting of letters testamentary. In the Affidavit, Kirchhof provided the following itemized description and valuation of the decedent's property at the time of her death:

D.    [Personal Property]:

1.    State Farm Check #114156134D . . . . . . .    $743.03
2.    [Life Insurance Check] . . . . . . . . . . . . . $7,465.95*
       * - Plus any interest that may accrue
3.    REA Patronage Capital . . . . . . . . . . . . . .    $995.52
4.    Fulton Manor Care Center Refund Check . .    $595.73

E.    Decedent left the following described real estate:    NONE

F.    Expenses previously allowed and ordered paid . . . .    -0-

G.    Total value of estate . . . . . . . . . . . . . . . . . . . . $9,800.23

On February 18, 2011, Williams, believing that the value of decedent's estate was greater than $40,000, filed her Petition for Order to Direct Application for Letters Testamentary. In her Petition, Williams asserted that the decedent "possessed property that should be a part of her estate that had a sum value in excess of Forty Thousand Dollars." Following a hearing on Williams's Petition, the circuit court found that Kirchhof exceeded her authority as attorney-in-fact in depositing the auction proceeds in the Callaway Account, of which Kirchhof herself was a pay-on-death beneficiary. The court

---

[1]  § 473.097.

3

concluded: "A reversal of the deposit of funds into the account at The Callaway Bank from the sales proceeds of the house and acreage and household contents is now required. Such funds become a part of the estate of the Decedent Martha Lutisha Qualls subject to probate administration." The court directed "DEBRA KIRCHHOF TO DEPOSIT 1/3 OF ESTATE VALUE ($73,093.28) WITH THE COURT UNTIL APPEAL IS RESOLVED OR GET BOND TO COVER FULL VALUE OF THE ESTATE."[2]

Finding that the decedent's probate estate consisted of more than $40,000.00, the circuit court held that the Small Estate procedures, Section 473.097,[3] were no longer applicable and ordered Kirchhof and Qualls, as the co-personal representatives of the decedent's estate, to apply for letters testamentary or otherwise indicate a renunciation to serve as a personal representative.

Qualls and Kirchhof both applied for letters testamentary, and on June 29, 2012, the circuit court issued letters testamentary to Qualls. On September 20, 2013, Qualls filed an Inventory and Final Settlement of the decedent's estate, indicating that the estate's only asset was $24,364.43 that had been deposited in the court registry. Although not clearly established in the record, it is presumed that the $24,364.43 — equaling a third of $73,093.28 — was the deposit Kirchhof made to the court per its 2011 directive. On October 22, 2013, the circuit court approved the Final Settlement and ordered the balance of the settlement to be distributed to Williams. Kirchoff appeals.

---

[2] There is nothing in the record to explain the court's conclusion that the value of the decedent's estate was $73,093.28. However, during oral argument on appeal, counsel for both parties agreed that this amount was the cash balance of the Calloway Account at the time of the decedent's death.

[3] All statutory references are to the Revised Statutes of Missouri 2000, as updated by the Cumulative Supplement 2013, unless otherwise indicated.

STANDARD OF REVIEW

We review this court-tried case under the standard articulated in *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). We will affirm the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* We review the evidence in a light most favorable to the judgment, accept it as true, and disregard any contradictory evidence. *Murphy v. Holman,* 289 S.W.3d 234, 237 (Mo. App. 2009). We also defer to the trial court's determination of the weight to be given the evidence and to the credibility of the witnesses. *Id.*

ANALYSIS

In her sole point on appeal, Kirchhof contends the circuit court erred in "ordering funds, paid to attorney-in-fact Debra Kirchhof via a pay-on-death designation, be turned over to . . . the Estate of Martha Qualls." In ordering the funds to be turned over to the decedent's estate, the circuit court found that Kirchhof exceeded her authority as attorney-in-fact in depositing the auction proceeds in the Callaway Account.

> A person who is appointed an attorney in fact under a power of attorney . . . who undertakes to exercise the authority conferred in the power of attorney, has a fiduciary obligation to exercise the powers conferred in the best interests of the principal, and to avoid self-dealing and conflicts of interest . . . and in the absence of explicit authorization, the attorney in fact shall exercise a high degree of care in maintaining, without modification, any estate plan which the principal may have in place . . . .

§ 404.714.1. Section 404.710.6(3) states that, in order for an attorney-in-fact to "make or revoke a gift of the principal's property in trust or otherwise," the power of attorney must "expressly authorize[ ]" such action. In *Estate of Herbert*, 152 S.W.3d 340 (Mo. App. 2004), this Court reviewed case law interpreting Section 404.710.6(3) and held:

5

"[W]e read [the relevant case law] as standing for the proposition that, pursuant to §
404.710.6(3) of the POA Act, an attorney in fact is prohibited from making a gift of the
principal's property to himself, unless he is expressly authorized to do so in the POA."
*Id.* at 353.

"In *Estate of Herbert*, the attorney-in-fact used a power of attorney to deposit
proceeds from the sale of the principal's property into a joint account that was titled in
the names of the principal and the attorney-in-fact." *Antrim v. Wolken*, 228 S.W.3d 50,
53 (Mo. App. 2007). There, this Court held that the sale proceeds were wrongfully
converted and belonged to the estate because the power of attorney did not expressly
authorize the attorney-in-fact to make gifts to himself. *Estate of Herbert*, 152 S.W.3d at
353.

In reaching its decision, this Court noted that there is "[s]trong public policy" for
requiring express authorization from a principal for the attorney-in-fact to make a gift to
himself of the principal's property:

> "It is for the common security of mankind . . . that gifts procured by agents
> . . . from their principals, should be scrutinized with a close and vigilant
> suspicion." Without a limitation on an attorney in fact's power to make
> gifts to himself of the principal's property, the potential for abuse would be
> great. Without the limitation of § 404.710.6(3), an attorney in fact, if so
> inclined, would be allowed to make an unauthorized gift, based upon
> claimed oral authorization of the principal, and the only person who could
> refute the claim would be dead.

*Id.* at 353 (alterations in original) (citation omitted) (quoting *Fender v. Fender*, 329
S.E.2d 430, 431 (S.C. 1985)).

Kirchhof argues that the rule articulated in *Estate of Herbert* does not apply here
because, unlike the attorney-in-fact in *Estate of Herbert*, she did not acquire an

ownership interest in the auction proceeds when she deposited them in the Callaway Account. More simply, Kirchhof suggests that she did not make a gift to herself because she was only a pay-on-death beneficiary of the Callaway Account, not an owner.

This Court has previously addressed and rejected the exact argument advanced by Kirchhof. In *Antrim*, the attorney-in-fact used a power of attorney to name herself as a transfer-on-death beneficiary of the principal's assets.

> [There, the attorney-in-fact] urge[d] this court to decline to follow . . . *Estate of Herbert*, because the TOD designations were contingent and uncertain and, therefore, d[id] not constitute gifts. More specifically, [the attorney-in-fact] assert[ed] that, when she made the TOD designations, she never named herself as the owner or took possession of the assets.

228 S.W.3d at 53. In rejecting the attorney-in-fact's argument, this Court explained that, "[w]hether or not the change in the designation of [the principal's] assets is properly characterized as a gift, it is clear that [the attorney-in-fact] profited from designating herself as the TOD beneficiary of [the principal's] assets" and, thus, the attorney-in-fact's TOD designations triggered "the same policy concerns that underlie the requirements for express authorization articulated in . . . *Estate of Herbert*." *Id.* at 54.

Likewise, here, although Kirchhof did not acquire any ownership interest in the auction proceeds when she deposited the funds in the Callaway Account, she profited from depositing the $80,240.00 into that account. Kirchhof stood to gain financially as a result of the deposit, [4] and the ultimate effect of the deposit was to increase the amount of Kirchhof's inheritance. See *Id.* ("'A fiduciary's acquisition of a right of survivorship in

---

[4] Kirchhof argues she was unaware that she was a pay-on-death beneficiary of the Callaway Account at the time she deposited the auction proceeds. Yet, the probate court found that Kirchhof had constructive knowledge of her beneficiary status because she signed the account's amended signature card designating her as a beneficiary.

7

property, even absent a present possessory interest, is generally sufficient to establish that a fiduciary has profited from a transaction." (quoting *Crosby v. Luehrs*, 669 N.W.2d 635, 645 (Neb. 2003))); see also *In re state of Lambur*, 397 S.W.3d 54, 63 (Mo. App. 2013) ("[A] deposit of a principal's proceeds into a joint bank account in which the attorney-in-fact had a right of survivorship is a gift to the attorney-in-fact."). Accordingly, for purposes of Section 404.710.6(3), by depositing the auction proceeds into an account for which she was a pay-on-death beneficiary, Kirchhof gave a gift of the decedent's property to herself. Thus, the next question we must answer is whether the POA expressly authorized Kirchhof to do so.

> The POA the decedent executed stated:

> So long as the said DEBRA M KIRCHHOF, is personally acting as attorney hereunder, she is authorized to make gifts or transfers in my name out of my property and assets to such recipients as her sole discretion may seem appropriate and proper . . . . Said attorney-in-fact, may herself be a recipient as to gifts by my said attorney. *If I have a current Will, the terms thereof shall be respected as to gifts by my said attorney.*

(Emphasis added). The POA expressly authorized Kirchhof, as attorney-in-fact, to gift the decedent's property to herself, so long as the gift respected the terms of the decedent's Will. The circuit court found that Kirchhof's depositing of the auction proceeds into the Callaway Account did not respect the provision of the decedent's Will directing "all of [her] estate, whether real, personal or mixed, wheresoever situated which [she] may own at the time of [her] death" to "be divided into three equal shares and distributed" among Kirchhof, Qualls, and Williams.

We find that there is substantial evidence to support the circuit court's determination that Kirchhof exceeded her authority as attorney-in-fact in depositing the

auction proceeds in the Callaway Account.  "[W]hile a will speaks from the death of the testator . . . when it is to be construed for the purpose of ascertaining the testator's intention, the court should consider his situation and the circumstances surrounding testator at the time of the execution of the will."  *Shackelford v. Fifer*, 269 S.W.2d 30, 33 (Mo. 1954).  Here, at the time the decedent executed her Will, she owned real and personal property to pass under the general devise of her Will — which, in pertinent part, granted Williams a one-third interest in the decedent's entire estate.  After Kirchhof held the auction, the decedent did not own any real property and had only a few items of personal property.  Kirchhof deposited the auction proceeds into the Calloway Account, on which she was listed as a beneficiary entitled to fifty percent of the account funds upon the decedent's death.  By depositing the proceeds into the Callaway Account, Kirchoff dramatically decreased Williams's inheritance under the Will and frustrated the decedent's intent to have the bulk of her estate distributed in three equal shares among Kirchoff, Qualls, *and Williams*.  Accordingly, the circuit court did not err in ordering the auction proceeds to be turned over to the decedent's estate.  Point denied.

## CONCLUSION

The judgment of the circuit court is affirmed.

_____
**LISA WHITE HARDWICK, JUDGE**

**ALL CONCUR.**

9