In the ESTATE OF: Irene LAMBUR a/k/a Verna Irene Lambur, deceased.

Joyce Baxter, individually, and as Personal Representative of the Estate of Irene Lambur, Ruth Becker, Roland Payne and John W. Payne, Petitioners–Respondents,

v.

Anna Stidham and Matt Stidham, Respondents–Appellants,

v.

Jackie Johnson, Third–Party Defendant–Respondent.

No. SD 29969.

Missouri Court of Appeals, Southern District, Division Two.

July 28, 2010.

Devin S. Kirby of Doniphan, Missouri, for Appellant.

James Spain, Poplar Bluff, Missouri, for Respondents Estate of Irene Lambur, Joyce Baxter Individually and as Personal Representative of Estate of Irene Lambur, Ruth Becker, Roland Payne and John W. Payne.

Jackie Johnson, Doniphan, Mo, Respondent pro se.

WILLIAM W. FRANCIS, JR., Judge.

Anna and Matt Stidham, husband and wife, (collectively "Appellants") appeal from judgment of the trial court in favor of Joyce Baxter individually, and as personal representative of the Estate of Irene Lambur, and Ms. Baxter's siblings, Ruth Becker, Roland Payne and John W. Payne ("Respondents"), in the amount of $118,134.46.[1] The central issue at the trial court was who, upon the death of Verna Irene Lambur ("Decedent"), was entitled to the proceeds of two bank accounts jointly owned, with rights of survivorship, by Anna Stidham, Jackie Johnson, and Decedent. Appellants contend the trial court erred in concluding, as a matter of law, that Respondents were entitled to the proceeds of the accounts because a question of fact existed concerning Decedent's intent expressed in her Power of Attorney. Respondents contend that all issues were of law only and judgment was properly entered. We reverse and remand the matter for new trial.

### Factual and Procedural History

During the time period relevant to this appeal, Decedent had health problems, which prohibited her from taking care of herself. Decedent was not married and had no children. As a result of her health problems, Decedent was unable to live permanently in her home. Decedent was forced to spend periods of time in a nursing home. Decedent contacted her nephew's wife, Anna,[2] for advice regarding her situation. Anna contacted an attorney and arranged for him to meet with Decedent and he ultimately agreed to represent Decedent. Decedent's attorney then arranged for her to be released from the nursing home. He also drafted a Power of Attorney, which Decedent later executed, to give Anna and Jackie the authority to make certain decisions on Decedent's behalf. The relevant grant of authority in Decedent's Power of Attorney is set forth below:

> To establish, change or revoke survivorship rights in property or accounts, beneficiary designations for life insurance, IRA and other contracts and plans, and registrations in beneficiary form; to establish ownership of property or accounts in my name with others in joint tenancy with rights of survivorship and to exercise any right I have in joint property; to exercise or decline to exercise any power given to me to appoint property; to disclaim or renounce transfers to me of property; to make inter vivos gifts of my property to my lineal descendants, including my attorneys in fact, in amounts that are equal by line or class and in an amount for any person that does not exceed in any year the annual gift tax exclusion; to make contributions to my Church and to other religious, charitable and educational or-

---

1. Jackie Johnson was named as a third-party defendant. No appeal was taken as to the judgment in her favor and she is not a party to this appeal.

2. For ease of reference, we refer to most of the parties by their first names. We mean no disrespect or familiarity.

ganizations; and to make contributions to political organizations and candidates.

Pursuant to Decedent's Power of Attorney, Anna and Jackie opened two bank accounts, which they co-owned with Decedent. Both of these accounts included rights of survivorship. On May 18, 2005, Decedent died intestate. At the time of Decedent's death, the combined value of these accounts was $129,134.46. Anna and Jackie met with Decedent's attorney to discuss Decedent's estate. During the meeting, Anna claimed Decedent's attorney advised them they could keep the money, which was in the joint accounts, although he denied that statement. Anna and Jackie initially agreed to split the money; however, Jackie's father told her she would go to hell if she kept Decedent's money, so Jackie told Anna to keep it all. Anna subsequently withdrew all the money and closed the joint accounts.

Anna proceeded to dispose of the entire $129,134.46. The major payments were for various personal items, including repayment of personal debt.

On June 30, 2005, Decedent's sister, Joyce Baxter, was appointed Personal Representative of Decedent's estate. On April 3, 2006, Joyce filed a Petition for Discovery of Assets against Anna and Matt. The petition requested that the trial court determine the title and right of possession to the proceeds of the two jointly-owned bank accounts and ultimately requested the trial court order the proceeds to be transferred from Appellants to Decedent's estate. Four of Decedent's other siblings joined as plaintiffs in this suit.

On October 17, 2008, jury trial was commenced. On October 21, 2008, a mistrial was declared, according to the docket

sheet, because the parties were "unable to agree on the number of jurors to render a verdict." On October 24, 2008, the matter was reset for a jury trial to begin on March 26, 2009.

On March 26, 2009, the morning the second trial was to commence, Respondents filed a "Motion for Judgment as a Matter of Law and/or Motion for Judgment on the Pleadings at the Close of All Evidence" (the "Motion").[3] Respondents gave this explanation on the record when they filed the Motion: "And we can't direct a verdict because that jury is gone, but we still think we can ask for a judgment as a matter of law based upon the evidence as the evidence was in that last trial." The trial court went off the record and invited the parties into chambers to discuss the Motion. The trial court then went back on the record and indicated that "at this point we sent the jury home and [it was] going to take this motion under advisement." The trial court also asked the parties to submit briefs on the Motion.

On June 22, 2009, the trial court held another hearing regarding the Motion. No evidence was submitted. The trial court again took the matter under advisement. On June 26, 2009, the trial court issued its judgment stating that it "considered [Respondents'] Motion for Judgment as Matter of Law and hereby finds in favor of [Respondents] and against [Appellants]." The trial court then entered judgment in Respondents' favor and against Appellants in the amount of $118,134.46. This appeal followed.

### Standard of Review

■■■ Before we can address the standard of review, we are compelled to consider the procedural posture of Respon-

---

**3.** This motion is also referred to by the trial court as "Motion for Judgment as a Matter of Law"; these motions are one and the same and are collectively referred to herein as the "Motion."

dents' Motion. The Motion specifically refers to evidence presented at a trial. In the body of the Motion, the trial court is referred to evidence submitted at the first trial, which resulted in a mistrial. Respondents mistakenly assumed, and the trial court acquiesced, that the evidence in the first trial was still before the court at the start of the second trial. This assumption, absent a stipulation, was clearly misguided. A mistrial is a trial that is terminated prior to its normal conclusion. A mistrial itself is the equivalent of no trial. *Franklin v. Southwestern Bell Telephone Co.*, 195 S.W.3d 524, 526 (Mo. App. E.D.2006). Therefore, when the Motion was taken up, there was no evidence before the trial court.

Furthermore, we are troubled that the procedure used here purported to shift the determination of factual issues from the jury to the trial court without a waiver of Appellants' right to a jury trial. The transcript reveals that the parties were arguing pre-trial motions before the court prior to commencement of the second jury trial, the court went off the record to discuss the Motion and upon going back on the record, the court announced the jury had been sent home and the Motion was taken under advisement. The record is silent as to the basis for this procedure, it is silent as to any waiver of the right to a jury trial, and it is silent as to how the court determined this procedure would be appropriate. The parties are entitled to a trial by jury in a discovery of assets action. Section 473.340.2.[4] A jury trial was demanded by Appellants. No waiver of jury trial was filed or announced on the record.

▮ The record before us, and the judgment entered by the trial court, make it difficult to ascertain the appropriate standard of review in consideration of this appeal. The best we were able to discern is that the court considered the Motion as either a motion for judgment on the pleadings (Rule 55.27(b)), or motion for summary judgment (Rule 74.04), as the foundation for its judgment. A judgment on the pleadings is not appropriate unless the issues presented to the court are strictly issues of law. *Eaton v. Mallinckrodt, Inc.*, 224 S.W.3d 596 (Mo.2007). A trial court can properly grant a motion for judgment on the pleadings only if the facts pleaded by petitioners, together with all reasonable inferences drawn therefrom, show petitioners cannot prevail under any legal theory. *A.R.H. v. W.H.S.*, 876 S.W.2d 687 (Mo. App. E.D.1994). If matters outside the pleadings are presented to the court and not excluded, the motion is treated as one for summary judgment. *Union Elec. Co. v. Public Service Commission*, 591 S.W.2d 134 (Mo.App. W.D.1979). Our analysis here indicates matters outside the pleadings were presented to the court.

In actuality, the record indicates the parties and the trial court treated the Motion as the equivalent of a motion for summary judgment. We do the same here. Therefore, we conclude—even though the parties did not follow the procedure of Rule 74.04—the trial court entered its judgment treating the Motion as one for summary judgment. Thus, we will apply a summary judgment standard of review and review the record in the light most favorable to the non-moving party, according the non-moving party the benefit of all inferences which may reasonably be drawn from the record, to determine whether Respondents have met their burden by "show[ing] a right to judgment flowing from facts about which there is no genuine

---

4. All references to statutes are to RSMo 2000, unless otherwise indicated. All rule refer-

ences are to Missouri Court Rules (2010).

dispute." *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 378 (Mo. banc 1993). Our review is *de novo. Wilson v. Rhodes,* 258 S.W.3d 873, 875 (Mo.App. S.D.2008). We use the same criteria the trial court should have used in initially deciding whether to grant the Motion. *Harris v. Smith,* 250 S.W.3d 804, 806 (Mo.App. S.D.2008). This review is based upon the record submitted to the trial court. *Sexton v. Omaha Property and Cas. Ins. Co.,* 231 S.W.3d 844, 845 (Mo.App. S.D.2007).

### *Analysis*

■ The trial court's judgment does not set forth any findings of fact or conclusions of law to support ruling in favor of Respondents.[5] However, we can infer the trial court's reasons from the record before us and the facts upon which the parties agree in their briefs on appeal. The trial court entered a judgment against Appellants in the amount of $118,134.46. The value of the joint bank account upon Decedent's death was $129,134.46. The Power of Attorney authorized Anna and Jackie "to make inter vivos gifts of my property to my lineal descendants, including my attorneys in fact ... in an amount for any person that does not exceed in any year the annual gift tax exclusion...." The gift tax exclusion for the year of Decedent's death was $11,000.00. The difference between $129,134.46 and $118,134.46, is $11,000.00. Thus, we deduce that the trial court determined that (1) Anna made a gift to herself by creating an account which included a right of survivorship to herself,

(2) Anna was authorized to make this gift based on the language of the Power of Attorney, but (3) the language of the Power of Attorney also limited the permissible amount of the gift to $11,000.00.

We now turn to Appellants' points relied on for review. We find the first point to be dispositive and, therefore, need not address the other two points. Appellants' first point, although inartfully presented, asserts that the trial court erred in sustaining Respondents' Motion because section 362.471.1 created a presumption that the money in the joint bank accounts became the sole property of Anna and Jackie upon Decedent's death and that Respondents not only failed to present any evidence to rebut this presumption, there was an issue of fact presented, in addition to issues of law, as to the Decedent's intent in the Power of Attorney describing *inter vivos* gifts to lineal descendants and her attorneys in fact.[6]

There was no evidence before the court when the Motion was presented and considered. There was no statement of uncontroverted facts, no testimony, no affidavits, no exhibits, nor any admissions or stipulations for the court to consider in ruling on the Motion. There was no compliance with Rule 74.04.

Nevertheless, Respondents' Motion addressed to the trial court *concedes* some issues of fact. The Motion asked for judgment against the Appellants in the amount of $129,134.46, the full amount that Anna withdrew from the joint accounts. In that same Motion, the Respondents acknowl-

---

**5.** There was no request for findings of fact and conclusions of law pursuant to Rule 73.01(c). That is not a basis for error in the absence of a request. *Hammons v. Ehney,* 924 S.W.2d 843, 850 (Mo. banc 1996).

**6.** The argument portions of both briefs, coupled with the point relied on, sufficiently address the issues on which this appeal turns.

Therefore, we review the contentions made in the argument portion of the brief *ex gratia. Mann v. City of Pacific,* 860 S.W.2d 12, 15 (Mo.App. E.D.1993) and *Willis v. Most Worshipful Prince Hall Grand Lodge of Missouri & Jurisdiction,* 866 S.W.2d 875 (Mo.App. E.D. 1993).

edge that if the facts were found to be that the intent of the Power of Attorney was that Anna be considered a lineal descendant, then the permissible gift to her would be limited to $11,000.00. That evidently is what the trial court found because judgment was entered in the amount of $118,134.46, which is $11,000.00 less than $129,134.46, the amount withdrawn from the joint accounts by Anna. In the midst of this awkward procedure, the trial court itself remarked on the record on the morning of the second trial that it was taking the Power of Attorney to be ambiguous. The trial court was required to consider matters outside the pleadings to arrive at this judgment. No pleadings admit a permissible gift was made to Anna in the amount of $11,000.00. The trial court took it upon itself to determine the decedent's intent with respect to any gift to Anna. The Decedent's intent is a question of fact to be determined by the trier of fact.

It was error for the trial court to enter judgment when the pleadings and Respondents' own Motion indicated there were issues of fact. None of the requirements as set forth in Rule 74.04 were before the court so that judgment, without a trial or compliance with Rule 74.04, is error. The trial court erred in granting judgment against Appellants in favor of Respondents in the amount of $118,134.46. Appellants' Point I is granted.

We reverse and remand this matter to the trial court for a new trial under appropriate and recognized procedure, or any other appropriate proceedings which would be dispositive of the case without the necessity of a trial.

SCOTT, C.J., and LYNCH, P.J., concur.