**In the ESTATE OF Irene LAMBUR a/k/a Verna Irene Lambur, deceased.**

**Joyce Baxter, individually, and as Personal Representative of the Estate of Irene Lambur, and Ruth Becker, Roland Payne and John W. Payne, Petitioners–Respondents,**

v.

**Anna Stidham and Matt Stidham, Respondents/Third Party Plaintiffs/Appellants,**

and

**Jackie Johnson, Third–Party Defendant.**

**No. SD 31910.**

Missouri Court of Appeals,
Southern District,
Division One.

April 23, 2013.

Devin S. Kirby, of Doniphan, MO, for appellants.

James E. Spain, of Poplar Bluff, MO, for respondents.

WILLIAM W. FRANCIS, JR., J.

Anna and Matt Stidham, husband and wife (collectively "the Stidhams"), appeal from the judgment of the trial court in favor of Joyce Baxter individually, and as personal representative of the Estate of Irene Lambur, and Ms. Baxter's siblings, Ruth Becker, Roland Payne, and John W. Payne (collectively "Respondents"), in the amount of $118,134.46.[1] Respondents brought a discovery-of-assets claim against the Stidhams to determine who, upon the death of Verna Irene Lambur ("Irene"),[2] was entitled to the proceeds of two bank accounts jointly owned with right of survivorship by Anna Stidham ("Anna"), Jackie Johnson ("Jackie"), and Irene. The Stidhams contend the trial court erred in

---

1. Jackie Johnson was named as a third-party defendant. However, no appeal was taken as to her and she is not a party to this appeal.

2. For ease of reference, we refer to most of the parties by their first names. We mean no disrespect or familiarity.

granting Respondents' motion for summary judgment because issues of material fact still exist. Respondents contend that summary judgment was properly entered. We affirm the judgment of the trial court as to Anna; we reverse and remand for further proceedings as to Matt Stidham ("Matt").

## Factual and Procedural Background

In recounting the background, we borrow from this Court's opinion in, *In re Estate of Lambur*, 317 S.W.3d 616 (Mo. App. S.D.2010) ("*Lambur I*"), without further attribution.

During the time period relevant to this appeal, Irene had health problems which prohibited her from taking care of her own needs and she required assistance with her daily living. Irene was not married and had no children. Irene contacted Anna, the wife of her nephew Matt, for advice regarding her situation. Anna contacted an attorney and arranged for him to meet with Irene. The attorney drafted a "DURABLE POWER OF ATTORNEY WITH GENERAL POWERS FOR ALL PURPOSES" (the "Lambur POA"), which Irene executed on February 16, 2005, giving Anna and Jackie the authority to make certain decisions on her behalf. The relevant grant of authority in the Lambur POA was:

15. ESTATE AND TAX PLANNING AND GIFTS: To establish, change or revoke survivorship rights in property or accounts, beneficiary designations for life insurance, IRA and other contracts and plans, and registrations in beneficia-

ry form; to establish ownership of property or accounts in my name with others in joint tenancy with rights of survivorship and to exercise any right I have in joint property; to exercise or decline to exercise any power given to me to appoint property [sic]; to disclaim or renounce transfers to me of property; to make inter vivos gifts of my property to my lineal descendants, including my attorneys in fact, in amounts that are equal by line or class and in an amount for any person that does not exceed in any year the annual gift tax exclusion[.]

The annual gift tax exclusion for 2005 was $11,000.

It is undisputed that on February 25, 2005, pursuant to the Lambur POA, Anna and Jackie redeemed seven of Irene's certificates of deposit and closed Irene's checking account at Bank of America in Cape Girardeau, Missouri. On the same day, Anna and Jackie opened two new bank accounts at Southern Missouri Bank & Trust ("Southern Missouri Bank") in Doniphan, Missouri, which were both titled, "Verna I[.] Lambur, or Jackie S[.] Johnson, or Anna Stidham, with Right of Survivorship."[3] Anna and Jackie deposited the money from Irene's bank account and certificates of deposit into the two new bank accounts at Southern Missouri Bank.[4]

On May 18, 2005, Irene died intestate. At the time of Irene's death, the combined value of the two bank accounts was $129,134.46. On May 25, 2005, Anna closed the two joint accounts and was issued a check payable to "Anna Stidham" for $129,134.36.[5] Anna spent all of the

3. As part of opening the accounts, Anna and Jackie gave the bank the Lambur POA.

4. The check from Bank of America was made payable to "Verna Lambur." Anna and Jackie's names were not included on the check used to open the accounts at Southern Missouri Bank.

5. There was testimony that Anna and Jackie had initially agreed to split the money, but Jackie changed her mind and told Anna to keep it all.

money on various personal items and debts.

On June 30, 2005, Irene's sister, Joyce Baxter, was appointed personal representative of Irene's estate. On April 3, 2006, Joyce, in her capacity as personal representative, filed a "Petition for Discovery of Assets" ("petition") against Anna and Matt. The petition requested the trial court determine the title and right of possession to the proceeds of the two jointly-owned bank accounts and ultimately requested the trial court order the proceeds to be transferred from the Stidhams to Irene's estate. Four of Irene's other siblings joined as plaintiffs in this suit.

On October 17, 2008, a jury trial was commenced. At trial, Anna testified:

Q. Do you recognize that as being a copy of the deposit slip opening up the account at the Southern Missouri Bank and Trust on February the 25th of 2005?

. . . .

Q. First of all, there is a date here of February the 25th, 2005. You see that, don't you?

A. Yes. I do.

Q. It has your signature—there you are—doesn't it?

A. Yes. It does.

. . . .

Q. The account that is opened up on February the twenty-fifth is Verna Irene Lambur.

Is that correct?

A. Yes.

Q. Or Jackie Johnson?

A. Yes.

Q. Or Anna Stidham?

A. Yes.

Q. It says with rights of survivorship, doesn't [sic]?

A. Yes.

Q. This was done on February the twenty-fifth. Is that right?

A. Yes.

Q. ... There is another deposit reading account information.

Do you see that?

A. Yes.

Q. It has February the twenty-fifth date, doesn't it?

A. Yes.

. . . .

Q. Was [Irene] with you when you opened that account?

A. No. She was not.

Q. She never did go in and agree to this account and say that this is the way she wanted the account, did she?

A. No.

. . . .

Q. Now let's get back to the deposit at the Southern Missouri Bank.

Who was there that day when the two of you deposited money for CDs into these bank accounts?

A. Just the bank teller. I don't remember her name.

Q. No. Besides yourself was anyone else there?

A. Oh, no.

Q. Jackie wasn't there?

A. When we deposited the money in the bank?

Q. Yes.

A. Yeah. Me and Jackie.

. . . .

Q. What did you tell the bank that you and Jackie—how did you want it deposited?

A. We just said Irene wants this in an account where no one can ever touch it and we gave him our Power of Attorney.

Jackie also testified that Irene was not present when the accounts at Southern Missouri Bank were set up and that she signed Irene's name to the new accounts.

At trial, Anna testified that from May 25, 2005 to November 12, 2005, she disposed of the entire $129,134.46, by purchasing hay and farm equipment for the farm she owned jointly with Matt; by giving monies to her daughter; by giving monies to her son and purchasing a "four-wheeler" for him; by purchasing a personal vehicle; by paying off a joint debt for herself and Matt; by paying off a personal debt owed by Matt; and by depositing funds in a joint account with Matt. Matt testified and admitted that he was aware Anna had transferred Irene's money into new bank accounts; he knew Anna had "checked that money out ... within a short period of time after Irene died[ ]"; that Anna told him what she did with the money; that Anna bought a car which he drove; that she paid off a loan against their farm; that she paid off a joint personal loan; that she bought a four-wheeler which he rode; and $10,000 of the funds was used for a family vacation. He testified he never had possession of the money from the joint accounts, never bought anything with the money, and never transferred the money or disposed of the money. Matt testified Anna had total control of the money.

On October 21, 2008, a mistrial was declared, according to the docket sheet, because the parties were "unable to agree on the number of jurors to render a verdict[,]" after some jurors were unable to continue in trial. On October 24, 2008, the matter was reset for a jury trial to begin on March 26, 2009.

On March 26, 2009, the morning the second trial was to commence, Respondents filed a "motion for judgment as a matter of law and/or motion for judgment on the pleadings at the close of all evidence." Respondents gave this explanation on the record when they filed the motion: "And we can't direct a verdict because that jury is gone, but we still think we can ask for a judgment as a matter of law based upon the evidence as the evidence was in that last trial." The trial court went off the record and invited the parties into chambers to discuss the motion. The trial court then went back on the record and indicated that "at this point we sent the jury home and [it was] going to take this motion under advisement." The trial court also asked the parties to submit briefs on the motion.

On June 22, 2009, the trial court held another hearing regarding the motion. No evidence was submitted. The trial court again took the matter under advisement. On June 26, 2009, the trial court issued its judgment stating that it "considered [Respondents'] Motion for Judgment as Matter of Law and hereby finds in favor of [Respondents] and against [Appellants]." The trial court then entered judgment in Respondents' favor and against the Stidhams in the amount of $118,134.46.

An appeal followed and pursuant to *Lambur I*, this Court reversed the trial court's judgment on July 28, 2010, on the basis that Respondents' motion indicated there were issues of material fact; none of the requirements as set forth in Rule 74.04 [6] were before the court so that judgment, without a trial or compliance with Rule 74.04, was error; and the trial court erred in granting judgment against the Stidhams in favor of Respondents in the amount of $118,134.46.

On September 3, 2010, Respondents filed a motion for summary judgment, memorandum of law, and statement of uncontroverted material facts. On October 4, 2010, the Stidhams filed their response

---

6. All rule references are to Missouri Court Rules (2012).

to that motion.[7] On December 13, 2010, a hearing was held on Respondents' motion. Arguments were heard and the trial court took it under advisement.

On January 21, 2011, a "JUDGE'S DOCKET ENTRY" was made indicating the "Motion for Summary Judgment and all supporting documents and memorandum reconsidered and denied." A trial setting was scheduled for February 14, 2011, which was passed in favor of a jury trial to commence on May 26, 2011.

On May 2, 2011, the Stidhams filed a motion for continuance which was granted and a jury trial was then set for September 26, 2011.

On September 19, 2011, Respondents filed a "motion for an order as to which portions of the power of attorney the court deems ambiguous[,]" and a "Memorandum in Support of Motion." Contained in the legal file is an email dated Thursday, September 22, 2011, at 8:49 a.m., purportedly from the trial court to the parties which reads as follows:

> Following our pre-trial conference yesterday I spent considerable time and effort reviewing relevant portions of the case file and a voluminous collection of argument and legal authorities. I have come to the conclusion that my prior statements finding certain provisions of the decedent's power of attorney to be ambiguous may have been in error. Case law dictates that just because parties have a difference of opinion as to the meaning of a term or provisions [sic] in an agreement does not necessarily render it ambiguous. That said, I am now convinced that decedent intended for attorneys in fact to make gifts to themselves and there is no ambiguity in

the power of attorney. Should either party wish to make a record I suggest we do so first thing Monday morning. A ruling on Plaintiff's [sic] pending motion is unnecessary. WJC, Judge.

On September 22, 2011, a "Motion for Continuance" was filed by the Stidhams and a docket entry from the same day indicates a conference call was held on the motion and it was granted over the objection of Respondents. The case was to be reset by agreement of the parties.

On October 5, 2011, Respondents filed a second motion for summary judgment and statement of uncontroverted material facts. Respondents alleged they were entitled to summary judgment against the Stidhams on the basis that: (1) Anna "did not have authority to make a gift of all of [Irene]'s funds to herself in that the power to do so was not expressly given by the [Lambur POA]"; and (2) that the evidence "conclusively show[ed] that [Matt] benefitted [sic] from the misappropriated funds when he knew or should have known of the source of the funds."

The Stidhams filed their response on November 2, 2011, with Respondents filing a reply on November 16, 2011. The Stidhams based their position on this Court's ruling in *Lambur I*, and stated that summary judgment was not "appropriate because issues of fact are in dispute that a jury must resolve[,]" and that Respondents had filed for summary judgment on the "exact same legal issues that were before" this Court. The Stidhams further alleged that Irene took "part in opening the relevant bank account[s,]" "signed the documents opening the account[s,]" and "participated in the initial deposit of money." The Stidhams further concluded that per *Lambur I*, Irene's "intent when signing

---

7. Neither the Respondents' September 2010 motion for summary judgment nor the Stidhams' responses were filed as a part of the record. This Court cannot determine what change, if any, was made to Respondents' subsequent summary judgment which was granted and is at issue in this appeal.

her Power of Attorney [was] a question of fact that only a jury [could] decide." The Stidhams denied that the funds were used for Matt's benefit and alleged they were used solely for Anna's benefit. The Stidhams further alleged in their "Statement of Additional Statement of Uncontroverted Material Facts" that Matt "never possessed, disposed of, or transferred any of the money."

A jury trial was then scheduled for February 27 and 28, 2012.

On January 13, 2012, a hearing was held on Respondents' "motion for survey [sic] judgment[,]" which was reconsidered and granted. The docket entry indicated that the issues were "found in favor of [Respondents] and against [the Stidhams]." Respondents were to "prepare formal written judgment[,]" which was done and filed on February 17, 2012. The jury trial was then cancelled. In its "Order and Judgment," the motion court found there "exists no genuine dispute as to the material facts at issue and [Respondents] are entitled to Judgment as a matter of law against [the Stidhams]." Judgment was entered in favor of Respondents and against the Stidhams in the amount of $118,134.46, with interest.[8] This appeal followed.

Stidhams allege the trial court erred in granting Respondents' summary judgment because: (1) a factual dispute exists because there was evidence that Irene signed the documents used to open the two accounts at Southern Missouri Bank; (2) a factual dispute as to Irene's intent exists because the Lambur POA is ambiguous; (3) a factual dispute exists as to whether Matt possessed, transferred, disposed of, or benefited from the money in the two accounts at Southern Missouri Bank. Respondents contend the trial court's grant of summary judgment was proper.

The determinative issues here are whether Anna was entitled to possession as a matter of law to the total funds remaining in the two accounts at Southern Missouri Bank following Irene's death. If she was not entitled to possession, we must determine if Matt knew about Anna's actions and benefited from the misappropriated funds entitling Respondents to summary judgment against Matt. We find Anna was not entitled to possession of these funds following Irene's death as a matter of law. However, we find a genuine issue of material fact exists as to whether Matt possessed, transferred, disposed of, or benefited from the proceeds in the two accounts at Southern Missouri Bank.

## Standard of Review

We review a grant of summary judgment on a *de novo* basis and view the record in the light most favorable to the party against whom judgment was entered. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993); *American Std. Ins. Co. v. Hargrave*, 34 S.W.3d 88, 89 (Mo. banc 2000). Summary judgment will be upheld on appeal if there is no genuine issue of material fact and movant is entitled to judgment as a matter of law. *ITT Commercial Fin.*, 854 S.W.2d at 380. "The key to summary judgment is the undisputed right to judgment as a matter of law, not simply the absence of a fact question." *Zerebco v. Lolli Bros. Livestock Market*, 918 S.W.2d 931, 934 (Mo. App. W.D.1996). We exercise great caution in affirming summary judgment because it is an extreme remedy, and the

---

8. The difference between the balance of the two bank accounts at the time of Irene's death and the amount of the Judgment against the Stidhams, is $11,000.00. Thus, we deduce that the trial court determined Anna was entitled to a credit for the $11,000 annual gift tax authorized by paragraph 15 of the Lambur POA.

procedure cuts off the opposing party's day in court. *ITT Commercial Fin.*, 854 S.W.2d at 377. When the trial court fails to specify the grounds for granting summary judgment, as is the case here, this Court will affirm if it was proper under any theory supported by the record and presented on appeal. *Conway v. St. Louis County*, 254 S.W.3d 159, 164 (Mo.App. E.D.2008).

■ "The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially." *ITT Commercial Finance Corp.*, 854 S.W.2d at 376. "As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment." *Id.*

### Analysis

In their first two points relied on, Stidhams argue the trial court erred because "factual dispute[s]" exist as to whether Anna had authority to deposit money from Irene's bank account and certificates of deposit into joint accounts with right of survivorship entitling Anna to possession of the funds upon Irene's death. Because the analysis and result is the same for Points I and II, we address them together.

### *Points I and II: No Genuine Issue of Material Fact and Movant is Entitled to Judgment as a Matter of Law in Favor of Respondents and Against Anna*

As noted herein, this case was previously before this Court. While the legal is-

sues may have been similar when this matter came before us previously, there was a limited record so our decision was based on a procedural issue. We determined that "[n]one of the requirements as set forth in Rule 74.04 were before the court so that judgment, without a trial or compliance with Rule. 74.04, [was] error." *Lambur I*, 317 S.W.3d at 621. We reversed and remanded this case to the trial court "for a new trial under appropriate and recognized procedure, or any other appropriate proceedings which would be dispositive of the case without the necessity of a trial." *Id.* Now, there is a larger record before this Court to review as the parties complied with Rule 74.04 and filed statements of uncontroverted facts, testimony, exhibits, and legal memorandums for the trial court to consider.[9] In light of the larger record before this Court, we can now review the case beyond purely procedural issues and proceed to legal issues.

■ This case involves a proceeding for discovery of assets, which is authorized under section 473.340,[10] and is essentially a search for assets belonging to a decedent at his or her death. *In re Estate of Boatright*, 88 S.W.3d 500, 509 (Mo.App. S.D. 2002). In such a proceeding, the court's role "is to determine whether specific property has been adversely withheld ... [from the estate]." *Id.* at 505 (internal quotation and citation omitted). Generally, the ultimate issue in a discovery-of-assets proceeding is whether title to the assets in question passed from the decedent to another person prior to death. *Id.* at 509.

---

9. The trial court again failed to set forth any findings of fact or conclusions of law in the judgment to support ruling in favor of Respondents. The record before this Court does not indicate that there was a request for findings of fact and conclusions of law pursuant

to Rule 73.01(c). That is not a basis for error in the absence of a request. *Hammons v. Ehney*, 924 S.W.2d 843, 850 (Mo. banc 1996).

10. All references to statutes are to RSMo 2000, unless otherwise indicated.

■ Here, Irene executed the Lambur POA making Anna, along with Jackie, her "attorney in fact." "[T]he interpretation of a written power of attorney is a question of law." *Elam v. Dawson*, 216 S.W.3d 251, 253 (Mo.App. W.D.2007).[11] Oftentimes, our opinions involving a written power of attorney are determined by the specific facts and conduct of the parties within the individual case. Therefore, the analysis in a fact-specific case may not apply generally to all cases involving a power of attorney.

■ There is no dispute that on February 25, 2005, pursuant to the Lambur POA, Anna and Jackie redeemed seven of Irene's certificates of deposit and closed Irene's checking account at Bank of America in Cape Girardeau. On the same day, Anna and Jackie opened two new bank accounts at Southern Missouri Bank in Doniphan, which were both titled, "Verna I[.] Lambur, or Jackie S[.] Johnson, or Anna Stidham, with Right of Survivorship." Anna and Jackie deposited the money from Irene's bank account and certificates of deposit into the two new bank accounts at Southern Missouri Bank. The issue is not their authority to open the joint bank accounts, or even the use of the funds in the joint bank accounts during Irene's lifetime. Rather, the issue is the right of possession of the proceeds from the joint accounts upon Irene's death; i.e., the right-of-survivorship language on the joint accounts.[12] The following paragraphs of the petition frame this issue:

14. That on or about the 25th day of May, 2005, after the death of the said Irene Lambur, Respondent Anna Stidham unlawfully, without consideration, obtained possession of the total funds then remaining in [the] accounts[.]

WHEREFORE, ... Petitioners pray that the Court discover the monies belong to the estate of Irene Lambur, determine the title and right of possession thereto, ... for a money judgment and further to render judgment in favor of the Personal Representative in favor of the estate and against Respondents Anna Stidham and Matt Stidham for the value thereof with interest thereon from May 25, 2005[.]

In order to determine possession of the proceeds as a matter of law, we must first define the act of opening the joint accounts *with right of survivorship*. This Court has specifically found that a deposit of a principal's proceeds into a joint bank account in which the attorney-in-fact had a right of survivorship is a gift to the attorney-in-fact. *Bridges v. White*, 223 S.W.3d 195, 199 (Mo.App. S.D.2007). Therefore, the deposit of Irene's proceeds into a joint account in which Anna had *a right of survivorship* is a gift to Anna.

---

11. In arguing summary judgment was error, the Stidhams mistakenly rely on a statement in this Court's previous opinion that Irene's intent was a question of fact to be determined by the trier of fact. *Lambur I*, 317 S.W.3d at 621. This statement did not preclude the trial court from ruling on a properly supported motion for summary judgment. This is evident by our decision remanding the case to the trial court for a new trial *"or any other appropriate proceedings* which would be dispositive of the case without the necessity of a trial." *Id.* (emphasis added). The statement the Stidhams rely upon is nothing more than *dicta*, which is clear in light of our previous finding that the trial court erred in entering judgment when the requirements of Rule 74.04 were not met. *State ex rel. Anderson v. Hostetter*, 346 Mo. 249, 140 S.W.2d 21, 24 (1940) (holding "expressions of opinion, not in anywise necessary for the actual decision ... before the court" must be considered obiter dicta); *Richardson v. QuikTrip Corp.*, 81 S.W.3d 54, 59 (Mo.App. W.D.2002) (holding statements that are not essential to the court's decision of the issue before it are obiter dicta).

12. For this reason, we do not address the power of Anna and Jackie, as attorneys-in-fact, to open the two joint bank accounts.

■ The next issue to address is whether the gift was proper under the Lambur POA. Under Missouri law, an attorney-in-fact is prohibited from making a gift of the principal's property to the attorney-in-fact, unless expressly authorized to do so in the power of attorney. *In the Estate of Dollie Marie Herbert,* 152 S.W.3d 340, 353 (Mo. App. W.D.2004); *see also Arambula v. Atwell,* 948 S.W.2d 173, 177 (Mo.App. S.D. 1997) (holding a "gift by an attorney in fact to himself or a third party is barred absent a clear intent to the contrary evidenced in writing.") (internal quotation and citation omitted). This is also set out in section 404.710.6 & .6(3), the Durable Power of Attorney Law, which provides in pertinent part:

Any power of attorney, whether durable or not durable, and whether or not it grants general powers for all subjects and purposes or with respect to express subjects or purposes, shall be construed to grant power or authority to an attorney in fact to carry out any of the actions described in this subsection if the actions are expressly enumerated and authorized in the power of attorney. Any power of attorney may grant power of authority to an attorney in fact to carry out any of the following actions *if the actions are expressly authorized in the power of attorney.*

. . . .

(3) To make or revoke a gift of the principal's property in trust or otherwise[.]

(Emphasis added).

■ Missouri law is clear that written authorization is required for the attorney-in-fact to make a gift to the attorney-in-fact of the principal's property. *See Arambula,* 948 S.W.2d at 177–78; § 404.710.6. Whether the attorney-in-fact has oral authorization from a principal to make a gift to himself by depositing proceeds into a joint account is irrelevant.[13] Strong public policy exists for requiring written authorization for an attorney-in-fact to make a gift to himself. *Herbert,* 152 S.W.3d at 353. Without a restriction on an attorney-in-fact's ability to make gifts to himself, the potential for abuse would be great. *Id.*

Without the limitation of § 404.710.6(3), an attorney in fact, if so inclined, would be allowed to make an unauthorized gift, based upon claimed oral authorization of the principal, and the only person who could refute the claim would be dead. . . . [T]he legislature in its wisdom has seen fit to include the requirement of § 404.710.6 to protect a class of people, the principals, who by the very circumstances that spawned the granting of the POAs, are least likely to be able to protect themselves from self dealing by unscrupulous fiduciaries.

*Id.*[14]

■ Powers of attorney are to be strictly construed. *Mercantile Trust Co., N.A. v. Harper,* 622 S.W.2d 345, 350 (Mo. App. E.D.1981). In this case, only one paragraph in the Lambur POA expressly authorized Anna to make a gift to herself:

15. ESTATE AND TAX PLANNING AND GIFTS: . . . to make inter vivos gifts of my property to my lineal descen-

---

13. The *Herbert* court determined that the enactment of section 404.710.6 overruled previous opinions holding that oral authorization from the principal was sufficient for an attorney-in-fact to make a gift of the principal's property to himself. 152 S.W.3d at 354.

14. For this reason, it is the best interests of all parties involved that the wishes of the principal be specifically stated in the power of attorney in accordance with the Durable Power of Attorney Law, sections 404.700 to 404.735.

dants, *including my attorneys in fact*, in amounts that are equal by line or class and in an amount for any person that does not exceed in any year the annual gift tax exclusion[.]

The Lambur POA expressly allowed Anna, as attorney-in-fact, to make a gift to herself in one year in an amount not to exceed the annual gift tax exclusion. In 2005, the gift tax exclusion was $11,000.

Applying section 404.710.6(3), and case law requiring strict construction a power of attorney, the Lambur POA does not expressly give Anna the right to make a gift to herself beyond the annual gift tax exclusion of $11,000. The two joint accounts with right of survivorship are considered a gift to Anna under Missouri law: Therefore, Anna violated the fiduciary duty she owed to Irene when she withdrew funds totaling more than the annual gift tax of $11,000.[15]

The Stidhams cite this Court's opinion in *Bridges v. White*, 223 S.W.3d at 195, in support of their position that a material issue of fact and law relating to the "authorization, justification and fiduciary duty" of Anna in withdrawing Irene's money exists. Their reliance is misplaced. In *Bridges*, the attorney-in-fact closed two certificates of deposit accounts that named Bridges as beneficiary and deposited the funds into an existing money market account she shared with decedent as joint tenant with right of survivorship. *Id.* at 197. Following decedent's death, Bridges filed suit against the attorney-in-fact to impose a constructive trust on the proceeds from the two certificates of deposit alleging the attorney-in-fact was not authorized under the power of attorney to

change beneficiaries, and to remove Bridges' name from the certificates of deposit or dispose of the proceeds in a manner which failed to include a provision making the proceeds payable to Bridges upon decedent's death. *Id.*

Bridges filed a motion for summary judgment, and the attorney-in-fact responded she was justified in altering the accounts in her fiduciary capacity because she became aware of the significant influence Bridges exercised over decedent and to have sufficient assets with which to care for decedent due to the state of her health. *Id.* The "salient question before us" in *Bridges* was "whether [attorney-in-fact] had the right to *initially* withdraw the funds." *Id.* at 200 (emphasis added). Our *Bridges* holding was limited to the issue of whether the attorney-in-fact had the authority to withdraw the funds from the certificates of deposit to care for the decedent prior to her death. *Id.* Since we found such authority was given in the power of attorney, we turned to the second part of our analysis for what purpose the funds were withdrawn. *Id.* As to the second part, we found that attorney-in-fact's allegations that the withdrawals were necessary for the care of decedent created a question of fact as to the reason for the withdrawal of the funds. *Id.*

Unlike *Bridges*, Anna's authority to withdraw the funds and place them in an account for Irene's benefit is not the issue. Rather, the issue is who was entitled to the funds upon Irene's death. This Court has specifically held that "[i]f an attorney-in-fact deposits proceeds from a sale into a joint bank account in which the attorney-in-fact had a right of survivorship, it is a

---

15. We do not intend for this opinion to be interpreted as finding joint accounts cannot be opened with the principal and attorney-in-fact. We recognize this is a common practice and may be necessary to fulfill the purpose of a power of attorney. The issue in this case is the effect of the right-of-survivorship language on the joint account causing the account to become a gift to the attorney-in-fact.

gift to [the attorney-in-fact.]" 223 S.W.3d at 199. We also stated our position in *Bridges,* which still stands today, that "a fiduciary under a power of attorney may not create a gift to himself by depositing funds into a joint account[.]" *Id.* Under *Bridges,* we find Anna was not authorized to receive more than $11,000 from the joint bank accounts.

 Here, there is no doubt that Irene's funds were deposited into joint bank accounts with right of survivorship. In an attempt to avoid Anna's breach of her fiduciary duty, the Stidhams argue there is a question as to whether or not Irene signed the documents that opened the accounts and personally participated in opening the accounts, and that question can only be answered by a jury. They further argue that if Irene participated in opening the accounts, Anna did not improperly invoke any authority she had as attorney-in-fact; i.e., was not acting under authority from the Lambur POA. This argument must fail for a number of reasons. First, Anna and Jackie both clearly testified that Irene was not present when the accounts at Southern Missouri Bank were opened. A party's testimony in court may amount to a judicial admission if that party "testifies unequivocally and understandingly to a material fact peculiarly within [her] own personal knowledge[.]" *Ewanchuk v. Mitchell,* 154 S.W.3d 476, 482 n. 9 (Mo. App. S.D.2005) (internal quotations and citations omitted). "Judicial admissions are generally conclusive against the party making them." *Moore Automotive Group, Inc. v. Goffstein,* 301 S.W.3d 49, 54 (Mo. banc 2009).

When questioned, Anna unequivocally testified that Irene was not present at the bank when she withdrew Irene's money and opened the joint bank accounts at Southern Missouri Bank; facts which are material and within her own personal knowledge. Jackie's testimony corroborated Anna's testimony. To now assert a genuine issue of fact exists as to whether Irene was present when the accounts were opened would contradict Anna's own testimony.[16]

Second, whether Irene was present or participated in opening the two accounts is arguably irrelevant. " 'It is for the common security of mankind ... that gifts procured by agents ... from their principals, should be scrutinized with a close and vigilant suspicion.' " *Herbert,* 152 S.W.3d at 353 (quoting *Fender v. Fender,* 285 S.C. 260, 329 S.E.2d 430, 431 (1985)). This argument is an attempt by the Stidhams to remove the characterization of the joint accounts as a "gift" so that the requirements of section 404.710.6 will not apply. Whether or not the creation of the joint accounts is properly characterized as a "gift," it is clear that Anna, acting as attorney-in-fact, profited from the right of survivorship in the proceeds from the joint accounts and as such, participated in self dealing. *See Antrim v. Wolken,* 228 S.W.3d 50, 54 (Mo.App. E.D.2007). The public policy concerns of potential abuse that led to the requirements for express authorization in a power of attorney, apply to the circumstances here. The potential for abuse is still present when there is removal of funds and creation of new joint bank accounts *with right of survivorship.* Also present is the difficulty regarding testimony of the only person who could

---

16. In their brief, the Stidhams point out that they submitted records from Southern Missouri Bank "that show [Irene] was at the bank when account number 1126250 was opened." They further state a "jury certainly could conclude that this evidence was more reliable than [Anna]'s testimony, which was based on her memory of a single day that occurred over fifty-five (55) months before the day she testified."

refute the claim, the principal who has died. Unless the power of attorney specifically authorized an attorney-in-fact to engage in self dealing, we will not find such authority existed.

Third, in view of the testimony, the Stidhams' "issue" that Irene participated in opening the accounts is merely argumentative, conjecture and frivolous, and as such, does not amount to a genuine issue of material fact. *See ITT Commercial Finance Corp.*, 854 S.W.2d at 382. It is clear from the bank documents opening the joint accounts that Anna and Jackie were acting under the authority given to them by the Lambur POA. Anna signed her name "Anna Stidham, POA" when the accounts were opened and thereafter on all checks written on the account. Under the Durable Power of Attorney Law, section 404.712.1, "[a]n attorney in fact acting for the principal under a power of attorney shall clearly indicate his capacity." To comply with this subsection, an attorney-in-fact holding property for a principal must hold the property "in the name of the principal, in the name of the attorney in fact as attorney in fact for the principal or in the name of the attorney in fact as personal custodian for the principal." § 404.712.2. The joint bank accounts were Irene's property being held by Anna as attorney-in-fact. By signing "Anna Stidham, POA" on the bank documents, Anna specified the capacity under which she was acting as attorney-in-fact under the Lambur POA.

Stidhams point to *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 127 (Mo. banc 2010) in support of their argument that a jury must decide whether Irene signed the documents used to open the accounts. In *Renaissance*, the court found there was *testimonial* evidence to support the competing positions regarding signatures. *Id.* Here, however, there was absolutely no testimony before the trial court that Irene was present or involved in opening the joint bank accounts. The only testimony is from Anna and Jackie, which established that Irene was not present when the accounts were opened, was not involved in determining the type of account, and that Jackie signed Irene's name on the bank documents. Unlike *Renaissance*, the Stidhams' argument is simply conjecture which does not amount to a genuine issue of material fact for a jury to decide.

■ The Stidhams also argue there was a question of fact as to whether Anna was entitled to gift herself the account proceeds because the Lambur POA was ambiguous in defining lineal descendents, which were entitled to both "inter vivos" and "at death gifts." This argument also has no merit. The law is clear that powers of attorney are to be strictly construed and in order for an attorney-in-fact to make a gift to herself of the principal's property, she must be *expressly* authorized to do so in the power of attorney. *Herbert*, 152 S.W.3d at 353; *Arambula*, 948 S.W.2d at 177–78; § 404.710.6(3). The only express authorization to make a gift to an attorney-in-fact in this case is found in paragraph 15 of the Lambur POA, and such a gift is limited to inter vivos gifts not to exceed the annual gift tax exclusion of $11,000. Nowhere in the Lambur POA is Anna authorized to make an "at death gift" to herself.

A review of Missouri law indicates that public policy strongly supports the proposition that if a principal wants an attorney-in-fact to have the power to make a gift to himself, that power must be expressly authorized in the power of attorney. The intent or oral authorization of the principal to make a gift is irrelevant without written authorization. This policy is in place to protect the principals from potential abuse

and is for their own benefit. Those drafting a power of attorney should expressly set forth in writing the actions the attorney-in-fact is authorized to carry out in the power of attorney in accordance with section 404.710. The same is true of those interpreting a power of attorney and the authority given to an attorney-in-fact under a power of attorney.

Here, the Lambur POA did not specifically authorize Anna to gift herself the entire proceeds of the two joint bank accounts upon Irene's death. Accordingly, the trial court did not err in granting summary judgment in favor of Respondents and against Anna. Points I and II are denied.

### Point III: Genuine Issue of Material Fact Existed as to Matt

 Because we find Anna was not entitled to possession of the proceeds of the two bank accounts upon Irene's death, we must address whether Matt possessed, transferred, disposed of, or benefited from the proceeds in the two accounts at Southern Missouri Bank. Matt, as the party against whom judgment was entered, is accorded the benefit of all reasonable inferences in our review of the record. *ITT Commercial Fin. Corp.*, 854 S.W.2d at 376.

A discovery-of-assets proceedings is based upon section 473.340, which provides:

> Any personal representative, administrator, creditor, beneficiary or other person who claims an interest in property which is claimed to be an asset of an estate or which is claimed should be an asset of an estate may file a verified petition in the probate division of the circuit court in which said estate is pending seeking determination of the title, or right of possession thereto, or both. . . . The court may order the joinder, as a party, of any person who may

claim an interest in or *who may have possession of any such property.*

§ 473.340.1 (emphasis added).

Respondents' petition alleged that "Anna Stidham and/or Matt Stidham" had possession of the funds in the joint accounts, Anna made the funds available to Matt, both Anna and Matt unlawfully withheld and claimed the funds from the joint bank accounts, and both Anna and Matt were unjustly enriched by their actions. The Stidhams denied that the funds Anna withdrew were spent for Matt's benefit and based on Anna's testimony, alleged the money was used solely for her benefit.

The trial court had before it competing claims and evidence as to Matt's possession of, and/or benefit from, the funds Anna withdrew from the joint accounts. Specifically, the Stidhams contend Matt never possessed, disposed of, or transferred any of the money. Anna testified as to how she spent the money she received from the two joint accounts, and questions were raised as to whether Matt received the benefit from some of the payments she made. For example, Anna purchased hay that was used on a farm jointly owned with Matt. Anna testified the hay was used for her cows, which were not Matt's cows. Also, a check was written to "Steeler and Stewart Chailland," and the "description" said for "Matt and Anna." Anna testified this payment was not paying off a part of Matt's debt because it was a loan for Wyatt's Discount store which she owned. However, she acknowledged Matt was included on the note and was therefore obligated to pay the note.

There was also evidence that Anna purchased a personal vehicle that Matt drove, a four-wheeler Matt rode, a $10,000.00 family vacation, paid off a joint personal debt owed by Matt, and deposited funds in a joint account with Matt. Matt testified

and admitted that he was aware Anna had transferred Irene's money into new bank accounts, and knew Anna had withdrew the money within a short period of time after Irene died. Nonetheless, he testified he never had possession of the money from the joint accounts, never bought anything with the money, and never transferred the money or disposed of the money. Matt testified Anna had total control of the money.

During trial, the attorneys dissected each payment and purchase Anna made with the money from the joint accounts. With each payment, Anna was questioned whether Matt benefited from the payment and Matt's use of the items she purchased. Matt and Anna also both denied that Matt ever had possession of the money or spent the money. Anna testified the money was hers and she spent the money on herself.

Giving Stidhams the benefit of all reasonable inferences, there is evidence to support their contention that Matt never possessed, transferred, disposed of, or benefited from the money in the two accounts. We find there was a genuine question of fact on the issue of Matt's benefit from the funds. Therefore, the trial court erred in granting summary judgment as to Matt. The Stidhams' Point III is sustained.

## Conclusion

Based on these specific facts, we find there is no genuine issue of material fact as to Respondents' claims against Anna and Respondents are entitled to summary judgment as to Anna. However, we find the trial court erred in granting summary judgment as to Matt because an issue of material fact remains as to Matt's possession of, and/or benefit from, the funds Anna withdrew from the joint accounts.

Accordingly, we affirm the grant of summary judgment as to Anna and reverse as to Matt and remand for further proceedings against Matt.

GARY W. LYNCH, P.J., and NANCY STEFFEN RAHMEYER, J., concur.