**Thelma G. ARAMBULA, Respondent,**

v.

**Thomas Delyn ATWELL, Dorinda Atwell Meadows, and Donna Atwell Fannin, Appellants.**

**No. 20261.**

Missouri Court of Appeals,
Southern District,
Division Two.

June 16, 1997.

John Alpers, Jr., Cabool, for appellants.

Brian G. Ellsworth, Ellsworth & Ellsworth, Cabool, for respondent.

**E. MITCHELL HOUGH, Special Judge.**

Thelma Arambula (Thelma) sued Thomas Delyn Atwell (Delyn), Dorinda Atwell Meadows (Dorinda) and Donna Atwell Fanning (Donna), the children of Jessie Wade Atwell (Jessie), to set aside a deed to property located in Texas County, Missouri. The property was owned by Jessie and conveyed to Delyn, Dorinda and Donna under a power of attorney executed by Jessie naming Delyn as attorney in fact. The trial court found for the plaintiff, ordered the deed set aside and declared title to the land to be an asset of the estate of Jessie in a probate proceeding in Zapata County, Texas. Delyn, Dorinda and Donna appeal, alleging the evidence did not support a finding of breach of fiduciary duty on the part of Delyn under the power of attorney and, further, that the court exceeded its jurisdiction by ordering title to be an asset of the foreign probate estate.

Affirmed in part and reversed in part.

## FACTS

Plaintiff/Respondent Thelma is a lifelong resident of San Ygnacio, Zapata County, Texas; Defendants/Appellants Delyn, Donna and Dorinda all reside in Alabama; and the deceased Jessie was a resident of Zapata County, Texas, where he was the airport manager prior to the accident which preceded his death.

Appellants are the only children born to Jessie and his former wife. Prior to meeting Thelma, Jessie was a full time Southern Baptist minister and, during the youthful years of the children, moved from community to community "approximately every two or three years" going from one church to another. In addition to his ministry, Jessie worked at odd jobs in factories, worked as an aviation mechanic, and became a certified "A & E" mechanic and a licensed pilot.

In 1981 Jessie left the home he shared with Appellants' mother. At about this time he met Thelma who was a widow with two small children. Jessie and Thelma met "about two months" after the death of her husband in April of 1981. After Thelma and Jessie met they began living together in her home in San Ygnacio, Texas. Appellants' parents were divorced in 1987. Sometime after the separation in 1981 the Appellants met Thelma. Dorinda and Thelma became friends after Jessie and Thelma joined Dorinda and her husband in the lumber business in Hattisburg, Mississippi, for about a year. Thelma and Jessie never married.[1]

On April 6, 1991, Jessie was manager of the Zapata County Airport at Zapata, Texas, when a light plane he was piloting crashed near San Ygnacio, Texas, and Jessie suffered injuries leaving him paralyzed from the neck down. He was flown to the Humana Hospital in San Antonio, Texas that day and placed on a respirator when he was unable to breath. All three Appellants went to his bedside where they remained for about a week. Due to a tracheotomy Jessie was unable to speak and after he regained consciousness he could only nod.

In May 1991, the Appellants returned to the hospital. Jessie was able to speak by means of a voice box if someone was present to operate the device at his throat. The three children, Thelma and Jessie discussed the need for someone to handle Jessie's affairs since he was paralyzed from the neck down and attached to a respirator. The five decided that someone must act as Jessie's attorney in fact through a power of attorney. Delyn and Donna located an attorney's office near the hospital and obtained a power of attorney form with the names and social security numbers of the grantor and grantee left blank. Returning to the hospital, discussion followed regarding who should act on Jessie's behalf. Delyn was ultimately select-

---

1. Plaintiff's petition reads as follows: "Comes now Thelma G. Arambula and for her cause of action states as follows:" The standing of Thelma to maintain this action in her individual capacity is not challenged by the defendants and on the record before us we cannot conclude that Thelma lacked standing to maintain the action as a matter of law and therefore do not raise the issue sua sponte. Those interested in the issue are referred to *Gowen v. Cote*, 875 S.W.2d 637 (Mo. App. S.D.1994); *Brown v. Kirkham*, 926 S.W.2d 197 (Mo.App.W.D.1996); *State ex rel. Bird v. Weinstock*, 864 S.W.2d 376 (Mo.App. E.D.1993) and *Matter of Estate of Widmeyer*, 741 S.W.2d 758 (Mo.App. S.D.1987). See also §§ 473.675 and 473.050, RSMo 1994. In this opinion, references to statutes are to that revision.

ed although Thelma testified that "he wanted me to, but like I said, I did not know anything about an attorney" and "It's hard when you don't know anything".

Shortly following the execution of the power of attorney on May 15, 1991, Delyn and Thelma set about to care for Jessie's business, including removing the personal property from Jessie's trailer at the Zapata County Airport and inquiring of the county commission about applicable hospitalization insurance. They went to Thelma's home at San Ygnacio where Delyn obtained possession of Jessie's "briefcase" which apparently served as the receptacle for Jessie's records. Among the contents of the briefcase was Jessie's 1988 Last Will which left nothing to the three children and named Thelma as beneficiary of his estate. Delyn became aware of the contents of the Will within a few days thereafter.

Delyn sought Social Security benefits for his father and was notified by letter dated July 3, 1991 that Jessie was not qualified to receive Supplemental Security Income (SSI) because his net worth was more than $2,000.

On June 8, 1991 Delyn, by use of the power of attorney, transferred title to several vehicles owned by his father to the various parties, including the transfer of a new Chevrolet car to Thelma, all without monetary consideration and with the knowledge and verbal approval of Jessie. Other properties not relevant to the issues here were transferred under the power of attorney, some to the substantial benefit of Thelma.

Prior to the accident Jessie had listed the Texas County land for sale with a Missouri realtor for $50,000. Following the accident he informed the children and Thelma that the property should bring at least $43,000. Jessie caused letters to be written to Delyn and on June 5, 1991, wrote: "Thelma made me see that I had not given each of you anything special, you all know that you may have anything. The property in Missouri is worth about $50,000.00. It must be sold. Each of you keeps part of the money."

On June 23, 1991, Jessie wrote to Delyn inquiring about his efforts to sell the Missouri property and stated "if it sells, put one or two thousand dollars in the bank and divide the rest in four ways".

On July 26, 1991, Delyn had an attorney in Troy, Alabama prepare a deed wherein Delyn, as attorney in fact for Jessie, conveyed the subject Missouri property and a lot and trailer in Mississippi to his sisters and himself as grantees. No consideration was paid.

In December, 1991, the Appellants sold the Mississippi land and trailer for $5,500 and divided the proceeds equally between them.

On December 5, 1991, a Contract for the Sale of Real Estate (offer) was proposed to Delyn as attorney in fact for Jessie on the Missouri property for the sales price of $37,-500. Jessie Atwell was shown as the owner/seller in the proposal. Jessie told Delyn to refuse the offer as too low in price and the offer was rejected.

In February, 1992, Jessie requested that Thelma obtain, for his benefit, the services of an attorney. Attorney Michael Culling was engaged and, after visiting Jessie in the hospital, prepared a revocation of the May 15, 1991 power of attorney which named Delyn as attorney in fact, prepared a Durable Power of Attorney naming Thelma as attorney in fact, and prepared a Last Will and Testament naming Thelma as Executrix. The Will contained provisions that Delyn and Dorinda would receive $1000 each and that Donna would receive $2,000 from the sale of the Mississippi and Missouri properties, and that Thelma would receive the balance of the assets. These documents were duly executed on February 21, 1992.

Attorney Culling was instructed by Jessie to inform Delyn of the documents and to demand the return of the briefcase containing Jessie's personal files, and to demand that the lands in Mississippi and Missouri be conveyed to Thelma as Jessie's "primary beneficiary", because "The transfer to you and your sisters was done against his wishes and in violation of the trust he placed in you." Delyn was so notified by letter of Attorney Culling dated February 28, 1992. The briefcase was returned; title to the Mis-

souri and Mississippi real estate was not.[2]

As time passed Jessie expressed a desire to be detached from the respirator so that he might die. Jessie was transferred to the Veterans Administration Hospital in Houston, Texas in the fall of 1991, and made a formal request to the Ethics Committee to be allowed to die. In February or March, 1992, he was successful in his efforts and selected April 7, 1992, as the date of his death. His daughters and Thelma were present when the respirator was unhooked and he died immediately. Delyn was not present.

The power of attorney of May 15, 1991, was admitted into evidence and can be described as a "general" power, granting to the attorney "full, general and universal power and authority to do and perform all and every act . . . as fully . . . as I might or could do if personally present". Nowhere in the power of attorney form was the power to gift property granted.

Appellants claim that their father orally approved the conveyances. Respondent denies this. Additionally, Appellants claim some scheme or design, conceived on misconceptions of the rules of the Social Security Administration, that these conveyances would entitle Jessie to additional benefits (SSI) and not interfere with longstanding benefits being received by Thelma.

At trial, Delyn testified that his instructions from his father were to sell the land and give Thelma one-fourth of the proceeds. After the close of the evidence the respondent filed an Alternative Second Count in her petition seeking the imposition of a constructive trust to that extent should the trial court find that Delyn was acting within his fiduciary capacity in the making of the deed to his sisters and himself. As hereinabove stated, the trial court found that Delyn acted in breach of his fiduciary duty and ordered the deed set aside and title vested in the Estate of Jessie Atwell in Zapata County, Texas.

## STANDARD OF REVIEW

Our standard of review in a court tried matter is determined by Rule 73.01. We will affirm the judgement of the trial court unless there is no substantial evidence to support it, or it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32[1–3] (Mo. banc 1976). "We defer to the credibility determinations made by the trial court, and we accept as true the evidence and permissible inferences favorable to the prevailing party and disregard contrary evidence and inferences." *Kahn v. Royal Banks of Missouri*, 790 S.W.2d 503, 505 (Mo.App. E.D. 1990).

In our review of a court-tried case, our concern is whether the trial court reached the proper result, not the route taken to reach that result. A correct decision by the trial court will not be disturbed on appeal merely because the trial court gave a wrong or insufficient reason. *Graue v. Missouri Property Ins. Placement*, 847 S.W.2d 779, 782[1,2] (Mo. banc 1993).

## DISCUSSION AND DECISION

Appellants argue that the trial court's finding that Delyn breached his fiduciary obligation to his father in conveying the land to himself and his sisters is in error. They argue that the conveyance of the land was pursuant to their father's instruction in furtherance of his overall plan to dispose of his assets.

■ Appellants concede that the power of attorney created in Delyn a "fiduciary duty." The relationship of principal and agent created by a power of attorney is by its nature one of trust and confidence, creating a fiduciary relationship and an obligation on behalf of the agent to act in the sole interest and for the sole benefit of the principal. *Estate of Linck*, 645 S.W.2d 70, 75[6] (Mo.App. W.D. 1982).

Delyn testified that no consideration was given in exchange for the deeds of July 26,

2. As to how and when Jessie became aware of the conveyance of the properties is not clear from the evidence; Appellants contend Jessie was always aware and gave prior approval and

Thelma claims notice came through a cancelled check on Jessie's account payable to the lawyer in Troy, Alabama who drafted the deeds.

1991, for either the conveyance of the Mississippi or the Missouri property. The Mississippi property was sold in December, 1991, and the proceeds divided between Delyn and his sisters. Following receipt of the letter dated June 23, 1991, dictated by Jessie and directing that the Missouri property be sold and the proceeds divided "four ways" Delyn caused the Missouri property to be conveyed into the names of himself and his sisters. This conflicts with Jessie's direction that the land be sold and the proceeds divided four ways.

▮ Absent consideration benefiting Jessie directly, the conveyance is a gift of the principal's real estate. Not only is the conveyance a gift of Jessie's property, but a gift to the agent himself. "A gift by an attorney in fact to himself or a third party is barred absent a clear intent to the contrary evidenced in writing." 38A C.J.S. GIFTS section 13.

▮ "A general power of attorney authorizing an agent to sell and convey property, even though it authorizes him to sell for such price and on such terms as to him shall seem proper, implies a sale for the benefit of the principal, and does not authorize the agent to make a gift of the property, or to convey or transfer it without a present consideration inuring to the principal." Annotation, "Power of Attorney as Authorizing Gift or Conveyance or Transfer Without a Present Consideration", 73 A.L.R. 884 (1931).

In *Fender v. Fender*, 285 S.C. 260, 329 S.E.2d 430 (1985), the Supreme Court of South Carolina was faced with a situation very similar to the case here presented. The appellant transferred real and personal property to himself under a power of attorney. The respondents, devisees and legatees under the will of the principal, brought suit to recover the money and property. The trial court ruled that appellant was without authority of make the transfers and so held by summary judgment. Appellant attempted to remove himself from the general rule (stated above) by contending he was orally authorized to effectuate the transfers. The court held:

"Notwithstanding such a claim, we hold today that any purported oral authorization was ineffective. The power to make any gift must be expressly granted in the instrument it self.

'It is for the common security of mankind ... that gifts procured by agents from their principals, should be scrutinized with a close and vigilant suspicion.' "

(citing *Harrison v. Harrison*, 214 Ga. 393, 105 S.E.2d 214, 218 (1958)).

This court was faced with application of these rules in the recent case of *Miller v. Miller*, 872 S.W.2d 654 (Mo.App. S.D. 1994). George Miller gave a general power of attorney to his grandson Danny who used the same to convey real estate to himself and his wife Tonia. Possibly as a result of domestic disputes between Danny and Tonia, George brought suit to impose a constructive trust for his benefit on the real estate. Although this court considered evidence regarding oral instructions of the principal concerning the conveyance and the reasons for the conveyance (to give Danny the authority to prevent George's son and Danny's father from dissipating and wasting the property) which supported the imposition of the constructive trust, this court also pointed out the requirements of the Durable Power of Attorney Law, §§ 404.700–.735, RSMo Supp.1991. "Absent from the power of attorney was any clause that 'expressly enumerated and authorized' Danny to make a gift of the plaintiff's property or change the survivorship rights to the property. See sections 404.710.6(3), (5) and (6). Not being so empowered, Danny was without authority to convey the property beyond the plaintiff's reach." *Id.* at 659.

Section 404.710.6(3) directs that:

"6. No power of attorney, whether durable or not durable, and whether it grants general powers for all subjects and purposes or with respect to express subjects and purposes, shall be construed to grant power or authority to an attorney in fact to carry out any of the following actions *unless the actions are expressly enumerated and authorized in the power of attorney:*

. . . .

(3) *To make or revoke a gift of the principal's property* in trust or otherwise;" (emphasis added).

Also see *Mercantile Trust Co. N.A. v. Harper*, 622 S.W.2d 345 (Mo.App. E.D.1981) cited by respondent.

■ The trial court did not err or abuse its discretion in finding that Delyn breached his fiduciary obligation to his father in conveying the land to his sisters and himself as claimed by Appellants in their first point of appeal.

■ The trial court did err in ordering the Missouri land to be included in the Zapata County, Texas Probate estate for the reason stated in Appellants' second point on appeal; in "that a foreign probate court has no jurisdiction over real estate located in Missouri". The trial court properly set aside the deed in question. Thus, title to the Texas County real estate remained in Jessie Wade Atwell on the date of his death. The provisions of § 473.675, RSMo 1994, control and "The law of this state respecting proceedings, procedures and substantive rights relating in any way to the property in this state of a nonresident decedent and its disposition, ... shall apply as if the decedent had been a resident of this state ...:" See *Matter of the Estate of Widmeyer*, 741 S.W.2d 758 (Mo.App. S.D. 1987).

The Judgment ordering the deed of July 26, 1991, recorded on August 16, 1991, at Book 490, Page 632 in the Office of the Recorder of Deeds of Texas County, Missouri, to the described real estate be set aside and held for naught is affirmed; and so much of the Judgment ordering the Texas County Missouri property to be an asset of the Estate of Jessie Wade Atwell, deceased, Cause No. 1229 in the County Court of Zapata County, Texas, is reversed.

SHRUM, J., and MONTGOMERY, C.J., concur.