

# In the
# Missouri Court of Appeals
# Western District

EVELYN J. RANDALL, BY THOMAS
RANDALL, PERSONAL
REPRESENTATIVE OF THE ESTATE
OF EVELYN RANDALL,

      Respondent,

v.

EDDIE D. RANDALL AND DONALD
ORVILLE RANDALL,

      Appellants.

WD79070

OPINION FILED:

August 30, 2016

**Appeal from the Circuit Court of Buchanan County, Missouri**
**The Honorable Randall R. Jackson, Judge**

**Before Division Four: Mark D. Pfeiffer, Chief Judge Presiding,**
**James Edward Welsh, and Edward R. Ardini, Jr., Judges**

Eddie Randall and Donald Randall appeal the circuit court's judgment in favor of Evelyn

Randall (by Thomas Randall, personal representative of her Estate) setting aside a warranty deed

executed by Eddie as Evelyn's attorney in fact.[1]  We affirm.

## Background

Evelyn Randall and Donald Randall, Sr. were married for over sixty years and had three

sons, Donald Jr., Eddie, and Thomas.  Evelyn and Donald Sr. bought their home at 4011 Pickett

---

[1]We refer to the parties by his or her first name for the sake of clarity; no disrespect is intended.

Road in St. Joseph in May of 1962. Twenty years later they bought the house next door at 4015 Pickett Road for use as rental property. Those properties are the subject of the underlying lawsuit.

By 2000, Donald Sr. required full-time nursing home care. Due to Donald Sr.'s condition and Evelyn's lack of experience with financial matters, they both executed durable powers of attorney ("DPOAs") in favor of their son, Eddie, on August 17, 2000. Evelyn's DPOA included a provision that permitted Eddie, as the attorney in fact, to make gifts to Evelyn's descendants (including himself) *only if* the amount of such gift does not exceed "the amount as may then qualify for the federal gift tax annual exclusion" and to "make such gifts to himself . . . *only if* any identical gift is also made at such times to each of my other then living children."

A little over three years later, Eddie and Donald Jr. proposed a plan to transfer their parents' property into the sons' names to shield Evelyn's estate from any potential liens for long-term care. Under the plan, Evelyn would maintain control of the property, would live there as long as she wanted, would pay the taxes and insurance, and could dispose of the property as she wished. Thomas objected and declined to be involved because he thought the plan was fraudulent and because he did not want to encumber his parents' property with any potential liens of his own. The proposed agreement was never reduced to writing, and Evelyn never gave written authorization for Eddie, as her attorney in fact, to transfer the property.

Nevertheless, in November of 2003 Eddie contacted a lawyer to prepare a deed conveying his parents' interest in the Pickett Road property to himself and Donald Jr. On November 20, 2003, Eddie executed that deed, purportedly acting as attorney in fact for his parents. Neither Evelyn nor Donald Sr. was present at the execution of the deed, and Evelyn was unaware of the deed until several years later. Donald Sr. passed away on March 10, 2004.

In 2006, Donald Jr. and Eddie sought to purchase some commercial real estate together as part of a proposed business venture. Eddie drafted an agreement whereby Evelyn would give her permission to him and Donald Jr. to pledge the Pickett Road property as collateral for a loan on the commercial property. Eddie presented that document (referred to herein as "Exhibit 4") to Evelyn, and Evelyn signed it on March 17, 2006. That document provided, *inter alia*, that Evelyn and her deceased husband owned their home at 4011 Pickett Road "until it was gifted to my two sons, Eddie Randall and Donald O. Randall, on *November 20, 2003*." The document further stated that Evelyn was of sane mind and fully understood "that this property will be used as collateral for purchase of commercial property by Eddie Randall and Donald O. Randall" and that she would "reside at the above named property as long as I desire." Donald and Eddie's business venture never materialized, and the property was never pledged as collateral.

In 2008, Eddie was charged with and eventually convicted of a federal crime involving child pornography and sentenced to prison. In November 2008, Evelyn revoked her DPOA that named Eddie as attorney in fact and executed a new DPOA naming Thomas as attorney in fact.

In January of 2009, prior to Eddie's incarceration, Evelyn, Eddie, and Thomas went to Evelyn's bank to retrieve all the documents from her lockbox. Among those documents (but unknown to Evelyn and Thomas at the time) was the 2003 warranty deed executed by Eddie. Several months later, while reviewing the documents from the lockbox, Thomas found the recorded deed transferring his mother's property to his two brothers. Thomas discussed the matter with his mother, and on June 29, 2009, sent a formal letter to Donald Jr. on Evelyn's behalf demanding that he and Eddie reconvey the property to Evelyn. Evelyn also informed Eddie and Donald that she wanted the real estate conveyed back into her name. Both sons refused to do so.

3

In May 2014, Evelyn filed a lawsuit seeking to have the deed set aside. Her sons' defense and theory of the case was that Evelyn had "gifted" the property to them in 2003 and then "ratified" that gift in 2006 when she executed the document in Exhibit 4 stating that she and Donald Sr. owned the property "until it was gifted to my two sons."

Evelyn died on April 3, 2015, twenty-five days prior to trial. Thomas was appointed as personal representative of Evelyn's estate and was substituted as party plaintiff. At trial, Evelyn testified, via deposition, interrogatory answers, and stipulated affidavit, that the value of her Pickett Road property in 2003 was "well in excess of $100,000" and included over 18 acres of land; that she never intended to give that property to Eddie and Donald Jr.; and that she did not discover that their names were on her property until 2009. She further asserted that she did not remember signing Exhibit 4, but that, had she thought at the time that she was acknowledging a "gift" of her property to Eddie and Donald Jr., she would not have signed it.

Following trial, the court entered judgment setting aside the deed on the basis that the conveyance was not authorized in writing, and, thus, was void, in accordance with *In re Estate of Lambur*, 397 S.W.3d 54 (Mo. App. 2013). The court held that "the conveyance was *void ab initio*" as a violation of Missouri's statutes limiting the authority of attorneys in fact to transfer their principals' property to themselves. The court also held that, regardless of any oral agreement to transfer the property into her sons' names, there was no donative intent by Evelyn to make a "gift." The court further held that the document in Exhibit 4 "did not and could not ratify a gift that never took place." In addition, the court held that Evelyn told Eddie and Donald that she wanted the property conveyed back into her name, alone, and that Eddie violated his fiduciary obligation by refusing to do so. The court concluded that Thomas met his burden of proof to set aside the deed and was entitled to judgment "granting that relief."

4

**Standard of Review**

As in any court-tried case, we will affirm the circuit court's judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). The judgment is presumed correct, and the appellant bears the burden of proving it erroneous. *Hahn v. Tanksley*, 317 S.W.3d 145, 153 (Mo. App. 2010). As to claims that there is no substantial evidence to support the judgment or that it is against the weight of the evidence, we defer to the circuit court's credibility determinations, and we accept as true the evidence and inferences favorable to the prevailing party and disregard contrary evidence and inferences. *Arambula v. Atwell*, 948 S.W.2d 173, 176 (Mo. App. 1997). We review a claim that the court erroneously declared or applied the law *de novo*. *Pearson v. Koster,* 367 S.W.3d 36, 43 (Mo. banc 2012).

**Discussion**

We address the Appellants' points in reverse order. **In Point III,** the Appellants contend that the circuit court misapplied and "granted relief inconsistent with" *Estate of Lambur*, 397 S.W.3d 54, in that it "failed to recognize that the language in the *Lambur* DPOA with regard to gifts was almost identical to the Randall DPOA" and "found clear, cogent, and convincing evidence when none was offered."

The gist of this claim, as we understand it, is that the circuit court erred in declaring, as a matter of law, that, because the DPOA did not authorize the conveyance of Evelyn's real estate in writing, it was void *ab initio* under *Lambur*, 397 S.W.3d 54, and that Exhibit 4 "did not and could not ratify a gift that never took place." This claim involves review of the circuit court's construction and application of the law and the interpretation of a written power of attorney. *Id.* at 63. These are questions of law, which we review *de novo*. *Pearson,* 367 S.W.3d at 43.

5

The duties of an attorney in fact under a DPOA are governed by the Durable Power of Attorney Act, §§ 404.700-.735, RSMo.[2] Section 404.714.1 of that Act provides, *inter alia*:

> An attorney in fact who elects to act under a power of attorney is under a duty to act in the interest of the principal and to avoid conflicts of interest. . . . A person who is appointed an attorney in fact . . . has a fiduciary obligation . . . to avoid self dealing and conflicts of interest.

This statute codifies the concept that "[t]he relationship of principal and agent created by a power of attorney is by its nature one of trust and confidence, creating a fiduciary relationship and an obligation on behalf of the agent to act in the sole interest and for the sole benefit of the principal." *Arambula*, 948 S.W.2d at 176. Thus, it is clear that the DPOA executed by Evelyn created in Eddie a "fiduciary duty" and an obligation to act solely for her benefit.

At issue in this case is the extent of Eddie's authority under the DPOA to make gifts to himself and others. Regarding the issue of gifts, the DPOA Act directs that:

> Any power of attorney, whether durable or not durable, and whether or not it grants general powers for all subjects and purposes or with respect to express subjects or purposes, shall be construed to grant power or authority to an attorney in fact to carry out any of the actions described in this subsection *if the actions are expressly enumerated and authorized* in the power of attorney. Any power of attorney may grant power of authority to an attorney in fact to carry out any of the following actions *if the actions are expressly authorized in the power of attorney*:
>
> . . . .
>
> (3) *To make or revoke a gift of the principal's property* in trust or otherwise[.]

§ 404.710.6(3) (emphasis added). This provision has been interpreted by our courts to mean that an attorney in fact is prohibited from making a gift of the principal's property to himself or anyone else, **unless** the DPOA contains **express written authorization** allowing him to do so.

---

[2]Statutory references are to the Revised Statutes of Missouri (RSMo) 2000.

*See, e.g., Lambur*, 397 S.W.3d at 64; *Herbert v. Herbert*, 152 S.W.3d 340, 353 (Mo. App. 2004); *Arambula*, 948 S.W.2d at 177-78.

The ***first question*** that arises under this analysis is whether the 2003 deed executed by Eddie as attorney in fact constituted a "gift" to himself and Donald Jr. within the meaning of section 404.710.6(3). We conclude, based on the applicable case law that it did.

In *Arambula*, for example, the trial court ordered that a deed, executed by the attorney in fact and conveying real property of the principal (the attorney in fact's father) to the attorney in fact and his sisters, be set aside. 948 S.W.2d at 176. On appeal, the Court upheld the trial court's judgment, declaring that the conveyance by the attorney in fact constituted an unauthorized "gift" to himself. *Id.* at 177. The *Arambula* Court explained that "[a]bsent consideration benefiting [the principal] directly, the conveyance is a gift of the principal's real estate. Not only is the conveyance a gift of [the principal's] property, but a gift to the agent himself." *Id*.

Here, too, as in *Arambula*, there was no "consideration benefiting [Evelyn] directly" from the conveyance, and, thus, the conveyance was a "gift of the principal's real estate," made by Eddie as attorney in fact to himself and to Donald Jr.

The ***next issue*** to consider is whether that gift was authorized under the terms of Evelyn's DPOA. The DPOA contained the following pertinent paragraphs:

> I give and grant to my Attorney in Fact the following powers, such powers to be used for my benefit and on my behalf (except as may be specifically provided hereinafter) and to be exercised by my Attorney in Fact only in a fiduciary capacity:
> . . . .
>
> 7. To make gifts, outright or in trust, in any year *in an amount not greater than the amount as may then qualify for the federal gift tax annual exclusion* (including any exclusion available under the split gift provisions with respect to my spouse, if any) to any of my descendants (including my Attorney) and to the spouse of any of my descendants, provided, however, acting as Attorney hereunder may make such gifts to himself or herself *only if any identical gift is also made at such times to each of my other then living children*[.] [Emphasis added.]

7

As noted, Missouri law prohibits an attorney in fact from making a gift of the principal's property to himself unless he has *explicit written authorization* in the DPOA to do so. *Lambur*, 397 S.W.3d at 64 (citing § 404.710.6; *Herbert,* 152 S.W.3d at 353; *Arambula,* 948 S.W.2d at 177-78). "Whether the attorney-in-fact has *oral authorization* from a principal to make a gift to himself . . . is irrelevant." *Id*. at 64. *See also Herbert* 152 S.W.3d at 354 (held that enactment of § 404.710.6 overruled prior opinions holding that principal's oral authorization was sufficient for attorney in fact to make a gift of principal's property to himself); *Arambula,* 948 S.W.2d at 176-78 (rejecting, as contrary to § 404.710.6, attorney in fact's argument that, despite lack of written authorization, he was orally authorized by principal to make a gift to himself).

Strong public policy supports this prohibition. *See Lambur*, 397 S.W.3d at 64; *Herbert,* 152 S.W.3d at 353; *Arambula*, 948 S.W.2d at 176. As explained in *Lambur*, section 404.710.6 is meant "to protect a class of people, the principals, who by the very circumstances that spawned the granting of the POAs, are least likely to be able to protect themselves from self dealing by unscrupulous fiduciaries." 397 S.W.3d at 64. "Without a restriction on an attorney-in-fact's ability to make gifts to himself, the potential for abuse would be great." *Id*.

Moreover, as pointed out in *Lambur*, "[p]owers of attorney are to be strictly construed." *Id*. In that case, the attorney in fact made a gift to herself of the proceeds of bank accounts held jointly with the principal. *Id*. at 57. As the Appellants acknowledge, that POA was similar to Evelyn's, in that it included a paragraph permitting the attorney in fact to make a gift to herself *only if* the amount did not exceed the annual gift tax exclusion ($11,000). *Id*. at 64-65. The appellate court held that "the two joint accounts with right of survivorship," which the attorney in fact converted to her own use, constituted a gift to herself. *Id*. Applying section 404.710.6(3) and strictly construing the POA, that Court concluded that the POA did not give the attorney in

8

fact the right to make a gift to herself beyond $11,000. *Id*. Thus, she violated her fiduciary duty to the principal when she withdrew funds totaling more than that amount. *Id*.

Similarly, in this case, Eddie's power under the DPOA to make gifts to himself or others was limited to the amount of the annual gift tax exclusion.[3] Eddie also was explicitly prohibited by the DPOA from making a gift to himself *unless* an "identical gift is also made at such times to each of [Evelyn's] other then living children." Nevertheless, Eddie gifted real property having a value well in excess of $100,000 to himself and to Donald and disregarded the requirement that Thomas be included.[4] This clearly exceeded his authority under the DPOA.

The Appellants acknowledge that *Lambur* is closely analogous to this case, but claim that the circuit court misinterpreted and misapplied *Lambur*. The basis of this claim is unclear to us; we assume that the Appellants are alluding to the fact that the attorney in fact in *Lambur* was apparently permitted to retain the amount of the annual gift tax exclusion ($11,000). *See id*. at 61 n.8. But that fact in no way establishes that Eddie properly gifted Evelyn's property (valued in excess of $100,000) to himself and Donald Jr.

The *final issue* to be resolved in this analysis is whether the document in Exhibit 4 somehow retroactively authorized Eddie's gift of Evelyn's property to himself and Donald, as the Appellants suggest. That document provides:

> I, Evelyn J. Randall, reside at 4011 Pickett Road, St. Joseph, MO 64503, in the county of Buchanan, being property that was mutually owned by me and my deceased husband, Donald Randall, until it was gifted to my two sons, Eddie Randall and Donald O. Randall, on <u>November 20, 2003</u> [date in handwriting]. I am of sane mind and fully understand that this property will be used as collateral for purchase of commercial property by Eddie Randall and Donald O. Randall.

---

[3]The annual gift tax exclusion amount in 2003 was $11,000. IRS 2003 Instructions for Form 709, *available at* https://www.irs.gov/pub/irs-prior/i709--2003.pdf, last visited on August 9, 2016.

[4]It is immaterial that Thomas declined to join the purported oral agreement to transfer the property out of his parents' names to shield it from a possible future Medicaid or Medicare lien. That did not relieve Eddie of his obligation to comply with the explicit terms of the DPOA and to act solely in Evelyn's best interest.

I will reside at the above named property as long as I desire. I have full faith and trust in my two above named sons for my well being.

The Appellants contend that Eddie's attempted conveyance of the principal's property by deed in 2003 was "ratified" by this document which Evelyn signed in 2006.

The circuit court held that the attempted transfer of Evelyn's property to Eddie and Donald in the 2003 deed was void as a matter of law, stating that "the conveyance was *void ab initio*" as a violation of Missouri's DPOA statutes and that the document in Exhibit 4 "did not and could not ratify a gift that never took place." The court did not err in so finding. In *Bopp v. Knowles,* 224 S.W.2d 65, 67-68 (Mo. 1949), our Supreme Court set out the requirements for ratification of a deed and made it clear that a deed which is "void" in the first instance is not capable of being ratified. "When a legal instrument is void, it has no legal effect. In short, it is a nullity." *Crocker v. Crocker*, 261 S.W.3d 724, 726-27 (Mo. App. 2008). Simply put, the deed Eddie executed in 2003, having no authority to do so under the DPOA, was void and a nullity. It transferred no interest in the property and, thus, could not be ratified. *See Herbert*, 152 S.W.3d at 345-46, 354 (unauthorized gift from attorney in fact to self that is void is "ineffective" in transferring title of property). There is no legal basis for the claim that Exhibit 4 "ratified" Eddie's gift of Evelyn's property to himself and Donald.

Based on the foregoing, we conclude that Eddie never had the legal authority to make a gift of Evelyn's property to himself and Donald, in that it exceeded the annual gift tax exclusion and a like gift was not made to all of Eddie's siblings. Thus, the circuit court did not err in finding, as a matter of law, that the conveyance was void at its inception and that "ratification" of the conveyance as a "gift" was not possible. Point III is denied.

**In Point II,** the Appellants contend that the circuit court erred in finding in favor of Evelyn because she did not prove her case to set aside a deed "to a clear, cogent and convincing standard," in that her trial testimony was "confused and contradictory."

"A suit to have a deed declared void invokes the most extraordinary power of equity," and, thus, the party seeking cancellation of a deed "bears the burden of establishing by clear, cogent, and convincing evidence the basis for exercising such power." *Hahn*, 317 S.W.3d at 153-54 (citing *Blackburn v. Spence*, 384 S.W.2d 535, 539 (Mo. 1964)). We note that the "clear, cogent, and convincing" standard is addressed to the fact finder; our review is to determine whether there was "substantial evidence" to support the decision. *See In re D.J.G.*, 426 S.W.3d 700, 711 n.4 (Mo. App. 2014).[5] In making that determination, we defer to the circuit court's assessment of the evidence and findings of fact and will reverse only if we have a firm belief that the judgment is wrong. *Pearson,* 367 S.W.3d at 43.

Even though much of Evelyn's evidence was introduced via deposition, interrogatory answers, and stipulated affidavit, we still defer to the finder of fact. The rationale for deferring to the circuit court's factual findings "is not limited to the superiority of the trial judge's position to make determinations of credibility." *Anderson v. City of Bessemer City,* 470 U.S. 564, 574 (1985). It also is based on the trial court's expertise as a fact-finder and on considerations of judicial efficiency, as explained in *Anderson*:

> The trial judge's major role is the determination of fact, and with experience in fulfilling that role comes expertise. Duplication of the trial judge's efforts in the court of appeals would very likely contribute only negligibly to the accuracy of

---

[5]The Appellants also claim that the judgment is against the weight of the evidence. An appellant making such an argument must (1) identify the trial court's finding he seeks to challenge as against the weight of the evidence; (2) identify all favorable evidence at trial that would support that finding; (3) identify evidence contrary to the court's finding; and (4) explain why, in light of the whole record, the supporting evidence is so lacking in probative value that the court should have reached a different conclusion. *O'Gorman & Sandroni, P.C. v. Dodson*, 478 S.W.3d 539, 544 (Mo. App. 2015). Here, the Appellants fail to follow this framework; thus, their "argument is 'analytically useless and provides no support' for [their] challenge." *See id*. Consequently, we do not address it.

11

fact determination at a huge cost in diversion of judicial resources. In addition, the parties to a case on appeal have already been forced to concentrate their energies and resources on persuading the trial judge that their account of the facts is the correct one; requiring them to persuade three more judges at the appellate level is requiring too much. [T]he trial on the merits should be "the 'main event' . . . rather than a 'tryout on the road.'"

*Id.* at 574-75 (internal citations omitted).

Here, the circuit court obviously resolved any conflicts in the evidence on the basis of credibility assessments and logic and found clear, cogent, and convincing evidence to establish that Evelyn intended no gift to the Appellants. The court found that the Appellants proposed a plan to shield Evelyn's assets from potential Medicare claims; that, while Evelyn initially may have acquiesced in the plan, neither she nor Thomas knew that Eddie had deeded the property to himself and Donald until six years later; and that, from then until her death, Evelyn sought to have her sons reconvey the property to her, first by oral and written demand, and then by bringing this lawsuit. The credibility and weight to be given the witnesses' testimony is for the trial court, which is free to believe none, part, or all of the testimony of any witness. *Hahn*, 317 S.W.3d at 153. It is evident from the circuit court's findings that it accepted as credible those portions of Evelyn's testimony that support the judgment, and we defer to those findings.

Although we have already determined that the "void" 2003 deed could not be ratified, even if it could have been, there is substantial evidence in the record to support the court's finding that Evelyn never intended to do so. Evelyn testified that she had no memory of talking to Eddie or Donald about the document in Exhibit 4. As to her execution of that document, Evelyn stated: "They just laid [the documents] down and said sign these." Evelyn specifically testified that she never intended to make a gift of her property to Eddie and Donald Jr., that she was unaware of the 2003 deed until 2009, and that she would not have executed Exhibit 4 had

12

she thought that it was "ratifying" such a gift. The circuit court did not err in finding that the document "did not and could not ratify a gift that never took place." Point denied.

In Point I, Appellants argue that the circuit court erred in failing to grant their summary judgment motion because the Plaintiff did not respond to it and, thus, is deemed to have admitted the facts alleged therein. The circuit court took the motion with the case and ultimately denied it.

We note, first, that except under circumstances not relevant here, the denial of a summary judgment motion "is not a final judgment and is therefore not an appealable order. This is true even when the appeal is taken from the final judgment in the case." *Lewis v. Allstate Ins. Co.*, 131 S.W.3d 451, 454 (Mo. App. 2004); *Sanders v. Ins. Co. of N. Am.*, 42 S.W.3d 1, 8 (Mo. App. 2000). In any event, because we are affirming the judgment as a matter of law in this case, the denial of the summary judgment motion is moot, and we need not address it. Point I is denied.

### Conclusion

For the foregoing reasons, we affirm the circuit court's judgment.

/s/ JAMES EDWARD WELSH
James Edward Welsh, Judge

All concur.

13